[No. S135160. July 26, 2007.]

KENDRA O'CONNELL, Plaintiff and Appellant, v.
CITY OF STOCKTON et al., Defendants and Respondents.

1064

**COUNSEL**

Mark T. Clausen for Plaintiff and Appellant.

O'Melveny & Myers, Meredith N. Landy, Dale M. Edmondson, Joshua D. Baker and Michel Amaral, for American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California, American Civil Liberties Union of San Diego & Imperial Counties and California Attorneys for Criminal Justice as Amici Curiae on behalf of Plaintiff and Appellant.

Meyers, Nave, Riback, Silver & Wilson, Joseph M. Quinn; Richard E. Nosky, Jr., City Attorney, and Lori S. Whittaker, Deputy City Attorney, for Defendants and Respondents.

Rockard J. Delgadillo, City Attorney (Los Angeles) and Claudia McGee Henry, Assistant City Attorney, for The League of California Cities as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**KENNARD, J.**—Our state Constitution allows cities and counties to enact and enforce local ordinances so long as they are "not in conflict" with the state's "general laws." (Cal. Const., art. XI, § 7.) Any conflicting ordinance is preempted by state law and thus void.

At issue here is a city ordinance allowing forfeiture to the city of any vehicle used to commit certain acts made criminal by state law. The Court of Appeal held that state law preempts the city ordinance. We agree.

**I.**

Plaintiff Kendra O'Connell filed this taxpayer action (Code Civ. Proc., § 526a) against the City of Stockton and its city attorney (City) challenging

the constitutionality of a City ordinance labeled "Seizure and Forfeiture of Nuisance Vehicles." Plaintiff sought to enjoin the City's enforcement of the ordinance. The trial court sustained the City's demurrer to plaintiff's complaint, allowing plaintiff leave to amend her complaint. When plaintiff did not do so, the trial court dismissed the lawsuit.

On plaintiff's appeal, the Court of Appeal reversed. It held that the forfeiture ordinance violated procedural due process because it failed to provide for a reasonably prompt postseizure probable cause hearing on the City's right to hold a vehicle pending its forfeiture. The Court of Appeal also held that the forfeiture ordinance was preempted by specific state law provisions governing vehicle forfeiture. This conclusion conflicted with *Horton v. City of Oakland* (2000) 82 Cal.App.4th 580 [98 Cal.Rptr.2d 371], in which a different Court of Appeal held that a vehicle forfeiture ordinance enacted by the City of Oakland, and similar to the one at issue here, was not preempted by state law. We granted review to resolve the conflict.[1]

## II.

Part XXV of chapter 5 of the Stockton Municipal Code is entitled "Seizure And Forfeiture Of Nuisance Vehicles." The term "forfeiture," as used here, means that the government assumes title to property used to further some illegal purpose. (See *United States v. Bajakajian* (1998) 524 U.S. 321 [141 L.Ed.2d 314, 118 S.Ct. 2028]; *Bennis v. Michigan* (1996) 516 U.S. 442 [134 L.Ed.2d 68, 116 S.Ct. 994]; *Calero-Toledo v. Pearson Yacht Leasing Co.* (1974) 416 U.S. 663, 682 [40 L.Ed.2d 452, 94 S.Ct. 2080].)

The ordinance at issue provides for the forfeiture of "[a]ny vehicle used *to solicit an act of prostitution, or to acquire or attempt to acquire any controlled substance*," with "[a]ll right, title, and interest" thereafter vesting in the City. (Stockton Mun. Code, §§ 5-1000, 5-1002, italics added.) A vehicle so used may be seized by a peace officer (1) with a court order; (2) incident to an arrest or a search conducted with a search warrant; or (3) with probable cause to believe the vehicle was used in the specified

---

[1] In granting review in this case, we asked the parties to brief these three issues: "(1) Does California state law preempt provisions of the City of Stockton Municipal Code pertaining to 'Seizure and Forfeiture of Nuisance Vehicles'? (2) Do the Stockton Municipal Code provisions allowing the commencement of vehicle forfeiture proceedings 'as soon as practicable but in any case within one year' satisfy the state and federal constitutional requirements of procedural due process? (3) Do the municipal code provisions allocating proceeds of vehicle forfeitures to the offices of the San Joaquin County District Attorney and the Stockton City Attorney violate state or federal constitutional guarantees of substantive or procedural due process?" Because we conclude here that state law preempts the provisions of the Stockton Municipal Code pertaining to seizure and forfeiture of nuisance vehicles, thus invalidating those provisions and rendering them unenforceable, we need not address the remaining two issues.

crimes. (*Id.*, § 5-1003.) Within one year of police seizure of a vehicle, either the Stockton City Attorney or the San Joaquin County District Attorney "shall file a petition for forfeiture with the Superior Court of San Joaquin County." (*Id.*, § 5-1006, subd. (a); see *id.*, § 5-1006, subd. (b).) The prosecuting agency must then give notice of the intended forfeiture proceedings to interested parties, advising them of their rights to file claims with the San Joaquin County Superior Court challenging the forfeiture. (*Id.*, § 5-1006, subd. (c).)

A trial of the vehicle forfeiture can be before either a court or a jury. The City has "the burden of proving by a preponderance of the evidence" that the vehicle was used for one of the prohibited purposes set out in the ordinance. (Stockton Mun. Code, § 5-1006, subd. (f).) Forfeited vehicles are to be sold; the proceeds are used first to pay any "bona fide or innocent purchaser, conditional sales vendor, mortgagee or lien holder" of the vehicle, when such payment is ordered by the prosecuting agency. (*Id.*, § 5-1008, subd. (a).) After paying the costs of publishing the notice of the forfeiture action and of storing, repairing and selling the vehicle (*id.*, § 5-1008, subd. (b)), remaining funds are distributed in proportionate shares to the involved prosecuting and law enforcement agencies. (*Id.*, § 5-1008, subd. (c).)

We now turn to the principles governing state law preemption of local ordinances.

## III.

■ We have in the past articulated the following principles on state law preemption of local ordinances. "Under article XI, section 7 of the California Constitution, '[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general [state] laws.' [¶] 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.] [¶] 'A conflict exists if the local legislation " '*duplicates, contradicts*, or *enters an area fully occupied* by general law, either expressly or by legislative implication.' " ' [Citations.]" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], italics added, fn. omitted (*Sherwin-Williams*); see also *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251 [23 Cal.Rptr.3d 453, 104 P.3d 813] (*American Financial*).) We explain the italicized terms below.

■ A local ordinance *duplicates* state law when it is "coextensive" with state law. (*Sherwin-Williams, supra*, 4 Cal.4th at pp. 897–898, citing *In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1] [as "finding 'duplication' where local legislation purported to impose the same criminal prohibition that general law imposed"].)

■ A local ordinance *contradicts* state law when it is inimical to or cannot be reconciled with state law. (*Sherwin-Williams, supra*, 4 Cal.4th at p. 898, citing *Ex parte Daniels* (1920) 183 Cal. 636, 641–648 [192 P. 442] [as finding " 'contradiction' " in a local ordinance that set the maximum speed limit for vehicles below that set by state law].)

■ A local ordinance *enters a field fully occupied* by state law in either of two situations—when the Legislature "expressly manifest[s]" its intent to occupy the legal area or when the Legislature "impliedly" occupies the field. (*Sherwin-Williams, supra*, 4 Cal.4th at p. 898; see also 8 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 986, p. 551 ["[W]here the Legislature has manifested an intention, expressly or by implication, wholly to occupy the field . . . municipal power [to regulate in that area] is lost."].)

■ When the Legislature has not expressly stated its intent to occupy an area of law, we look to whether it has *impliedly* done so. This occurs in three situations: when " '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality." (*Sherwin-Williams, supra*, 4 Cal.4th at p. 898.)

■ With respect to the *implied* occupation of an area of law by the Legislature's full and complete coverage of it, this court recently had this to say: " 'Where the Legislature has adopted statutes governing a particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme.' " (*American Financial, supra*, 34 Cal.4th at p. 1252, quoting *Tolman v. Underhill* (1952) 39 Cal.2d 708, 712 [249 P.2d 280].) We went on to say: " 'State regulation of a subject may be so complete and detailed as to indicate an intent to preclude local regulation.' " (*American Financial, supra*, at p. 1252.) We thereafter observed: " 'Whenever the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the entire control over whatever phases of the subject are covered by state legislation ceases as far as local legislation is concerned.' " (*Id.* at p. 1253, quoting *In re Lane* (1962) 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897].) When a local ordinance is identical to a state statute, it is clear that " 'the field sought to be covered by the ordinance has already been occupied' " by state law. (*American Financial, supra*, at p. 1253.)

■ "[W]hen local government regulates in an area over which it traditionally has exercised control, such as the location of particular land uses, California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].)

With these principles in mind, we consider below whether state law preempts the City's vehicle forfeiture ordinance.

## IV.

As we noted earlier, the City's ordinance permits the forfeiture of any vehicle used to "to solicit an act of prostitution, *or* to acquire or attempt to acquire any controlled substance." (Stockton Mun. Code, § 5-1000, italics added.) We turn first to the latter aspect. The Court of Appeal concluded that this part of the ordinance was preempted by certain provisions of the California Uniform Controlled Substances Act (UCSA) (Health & Saf. Code, § 11000 et seq.) authorizing forfeiture of vehicles used in specified serious drug crimes. We too look to the UCSA as the source of state law preemption of this part of the City's forfeiture ordinance. But unlike the Court of Appeal, we do not rely solely on the UCSA's vehicle forfeiture provisions; instead, we consider the UCSA *as a whole*, a comprehensive scheme defining and setting the penalties for crimes involving controlled substances. This requires an analysis of various UCSA provisions pertinent here. It makes for tedious reading, but it is central to a resolution of the preemption issue presented.

As defined in the UCSA, controlled substances include every "drug, substance, or immediate precursor" (Health & Saf. Code, § 11007) listed in one of five schedules set out in Health and Safety Code sections 11054 through 11058. The schedules include all commonly known controlled substances, such as marijuana, cocaine, heroin, and methamphetamine, as well as many others less familiar. The UCSA not only regulates the lawful use and distribution of controlled substances (see Health & Saf. Code, §§ 11100, 11210–11211), but also defines as criminal offenses the unlawful possession and distribution of specified controlled substances (see Health & Saf. Code, §§ 11350–11361).

In addition, the UCSA sets forth the penalties for criminal violations of its provisions. For example, unlawful possession of "not more than 28.5 grams of marijuana" is a misdemeanor offense carrying a maximum fine of $100 and no jail time. (Health & Saf. Code, § 11357, subd. (b).) For more serious possessory drug crimes and those involving manufacture, sale, or possession for sale, the UCSA prescribes felony penalties. (See Health & Saf. Code,

§§ 11350, subd. (a) [providing that certain specified possessory drug crimes "shall be punished by imprisonment in the state prison"], 11351.5 [punishment for the sale of cocaine base is "imprisonment . . . for . . . three, four, or five years"], 11352, subd. (a) [providing state prison terms of three, four, or five years for transporting, importing into California, selling, furnishing, administering, or giving away certain controlled substances].)

In Health and Safety Code section 11470, the Legislature specifies the following as subject to forfeiture: Controlled substances "manufactured, distributed, dispensed, or acquired in violation of this division" (*id.,* subd. (a)); the raw materials, products and equipment used, or intended to be used, to manufacture, compound, process, deliver, import or export controlled substances in violation of the UCSA (Health & Saf. Code, § 11470, subd. (b)); items used as containers for the property described in subdivisions (a) and (b) (*id.,* subd. (c)); "[a]ll books, records, and research products and materials, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this division" (*id.,* subd. (d)); moneys, negotiable instruments, securities and other valuable items furnished or intended to be furnished in illicit exchanges of specified controlled substances as well as all proceeds traceable to such exchanges (*id.,* subd. (f)); and the real property of persons convicted of specified drug crimes involving such property, except for real property "used as a family residence or for other lawful purposes, or which is owned by two or more persons, one of whom had no knowledge of its unlawful use" (*id.,* subd. (g)).

 Subdivision (e) of Health and Safety Code section 11470 governs forfeitures involving boats, airplanes, and *vehicles*. It makes the following subject to forfeiture: "The interest of any registered owner of a boat, airplane, or *any vehicle* [other than certain vehicles used for agricultural purposes] which has been *used as an instrument to facilitate the manufacture of, or possession for sale or sale of*" specified amounts of certain controlled substances including 14.25 grams or more of heroin or cocaine base, or a substance containing 14.25 grams or more of heroin or cocaine base, or 28.5 grams or more of all schedule I controlled substances except marijuana, peyote, or psilocybin, or 10 pounds or more of marijuana, peyote, or psilocybin, or methamphetamine in any amount. (Health & Saf. Code, § 11470, subd. (e), italics added.) Health and Safety Code section 11488.4, subdivision (i)(1), states that forfeiture of airplanes, boats, and vehicles requires *proof beyond a reasonable doubt* that the property to be forfeited was used for one of the specified drug offenses. Thus, as relevant here, under the UCSA a vehicle can be forfeited to a government entity only upon proof beyond a reasonable doubt that the vehicle was "used as an instrument to facilitate the manufacture of, or possession for sale or sale" of specified amounts of certain controlled substances. (Health & Saf. Code, § 11470, subd. (e).)

In Health and Safety Code section 11469, the Legislature has established "guidelines" that local law enforcement and prosecutorial agencies should follow in enforcing the state law provisions regarding the seizure and forfeiture of property used to commit drug crimes in California. It points out, among other things, that "[l]aw enforcement is the principal objective of forfeiture," and that "[p]otential revenue [to be derived from property forfeiture] must not be allowed to jeopardize the effective investigation and prosecution of criminal offenses." (Health & Saf. Code, § 11469, subd. (a).) And it reminds prosecutors that they should "[w]henever appropriate . . . seek criminal sanctions as to the underlying criminal acts which give rise to the forfeiture action." (*Id.*, subd. (c).)

Recognizing that forfeiture can sometimes lead to harsh results, the Legislature included this cautionary language in subdivision (j) of Health and Safety Code section 11469: "Although civil forfeiture is intended to be remedial by removing the tools and profits from those engaged in the illicit drug trade, it can have harsh effects on property owners in some circumstances. Therefore, law enforcement shall seek to protect the interests of innocent property owners, guarantee adequate notice ·and due process to property owners, and ensure that forfeiture serves the remedial purpose of the law."

We summarize: State law, through the UCSA (Health & Saf. Code, § 11000 et seq.), defines controlled substances, regulates their use, and sets penalties for their unlawful possession and distribution. Among the available penalties is vehicle forfeiture but, as pointed out earlier, only upon *proof beyond a reasonable doubt* of the vehicle's use to facilitate certain serious drug crimes (manufacture, sale, or possession for sale of methamphetamine, or of heroin or cocaine base, marijuana, peyote, or psilocybin and other schedule I controlled substances in specified amounts). By way of contrast, the City's ordinance allows the harsh penalty of vehicle forfeiture upon proof merely by a *preponderance of evidence* of a vehicle's use simply "to attempt to acquire" any amount of any controlled substance (for instance, less than 28.5 grams of marijuana, a low-grade misdemeanor warranting only a $100 fine and no jail time and not subject to vehicle forfeiture under the UCSA).

The comprehensive nature of the UCSA in defining drug crimes and specifying penalties (including forfeiture) is so thorough and detailed as to manifest the Legislature's intent to preclude local regulation. The UCSA accordingly occupies the field of penalizing crimes involving controlled substances, thus impliedly preempting the City's forfeiture ordinance to the extent it calls for the forfeiture of vehicles used "to acquire or attempt to acquire" (Stockton Mun. Code, § 5-1000) controlled substances regulated under the UCSA. (See *American Financial, supra*, 34 Cal.4th at p. 1252; *Tolman v. Underhill, supra*, 39 Cal.2d at p. 712.)

Relevant to this conclusion is our decision in *In re Lane, supra*, 58 Cal.2d 99. That case involved a statewide statutory scheme that, we held, fully occupied an area of regulation, thereby preempting a municipal ordinance covering the same legal area. The statewide statutory scheme consisted of comprehensive criminal proscriptions against specified sexual conduct, and the local law was a Los Angeles City ordinance criminalizing sexual intercourse between persons not married to each other. Although the state statutory scheme included laws prohibiting prostitution, pimping and pandering, bigamy, acts against public decency, rape, and various sex crimes against children, it did not include any offense for "simple fornication or adultery." (*In re Lane, supra*, 58 Cal.2d at p. 104.) This court reasoned that the exclusion of fornication or adultery from the comprehensive state law scheme showed the Legislature's intent that "such conduct sh[ould] not be criminal." (*Ibid.*)

Here too the Legislature's comprehensive enactment of penalties for crimes involving controlled substances, but exclusion from that scheme of any provision for vehicle forfeiture for simple possessory drug offenses, manifests a clear intent to reserve that severe penalty for very serious drug crimes involving the manufacture, sale, or possession for sale of specified amounts of certain controlled substances.

We now consider the Court of Appeal's decision in *Horton v. City of Oakland, supra*, 82 Cal.App.4th 580, which involved an ordinance similar to the one at issue here, but which reached a conclusion contrary to that of the Court of Appeal in this case. *Horton* held that the UCSA's forfeiture provisions did not preempt Oakland's ordinance allowing forfeiture of vehicles used to acquire or attempt to acquire controlled substances. It reasoned that the ordinance covered an area of law "untouched by statewide legislation" because the UCSA's forfeiture provisions, which apply only to persons possessing for sale or selling illicit drugs, were "silent with regard to vehicles used by *drug buyers*." (*Horton v. City of Oakland, supra*, 82 Cal.App.4th at p. 586, italics added.) In focusing solely on the UCSA's forfeiture provisions, *Horton* failed to consider the UCSA's comprehensive scheme of drug crime penalties, which include forfeiture of various items of property, including vehicles, when used in specified serious drug offenses. Thus, *Horton* never addressed whether the UCSA as a whole constitutes a comprehensive scheme that fully occupies the field of penalizing crimes involving controlled substances. Because of our conclusion in this case that the UCSA's *comprehensive regulation of drug offenses as a whole* impliedly preempts the City's ordinance allowing forfeiture of vehicles used in acquiring controlled substances, we need not resolve whether the UCSA's *forfeiture provisions alone*

establish implied state preemption, the question entertained by the Courts of Appeal in this case and in *Horton.*[2]

We now turn to the other aspect of the City's forfeiture ordinance, allowing for the forfeiture of any vehicle used to solicit prostitution. The Court of Appeal below held that the Legislature had *expressly preempted* that field through the interplay of two Vehicle Code provisions: Vehicle Code section 21 (precluding local regulation in areas covered by the Vehicle Code absent express legislative authorization) and Vehicle Code section 22659.5, subdivision (a) (setting up a five-year pilot program for local entities to declare vehicles used in specified prostitution-related offenses public nuisances). The Court of Appeal was correct, as we explain below.

Vehicle Code section 21 states: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and *no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.*" (Italics added.) Thus, under section 21, local regulation of any "matter[]" covered by this state's Vehicle Code is prohibited unless the Legislature has expressly allowed local regulation in that field. (See *Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 550 [183 Cal.Rptr. 73, 645 P.2d 124]; *Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1177–1178 [105 Cal.Rptr.2d 172].)

The matter that is covered by the Vehicle Code and that is pertinent here is the authority of local government entities to declare a vehicle used in soliciting prostitution to be a public nuisance. That topic is addressed in the Vehicle Code by subdivision (a) of section 22659.5. That provision allows a city or a county to "adopt an ordinance establishing a five-year pilot program that implements procedures for declaring *any motor vehicle a public nuisance*" when used in the commission of specified criminal conduct, including acts covered in Penal Code section 647, subdivision (b), which prohibits engaging in acts of prostitution as well as soliciting or agreeing to engage in such acts. (Veh. Code, § 22659.5, subd. (a), italics added.)

Subdivision (b) of Vehicle Code section 22659.5 permits local ordinances adopted under the statutory scheme to "include procedures to

---

[2] The dissent, relying on the Court of Appeal decision in *Horton*, asserts there is no conflict between the City's ordinance and the UCSA because the former covers drug buyers while the latter is silent on that topic. Not so. As comprehensive statewide legislation that broadly addresses the problems arising from illicit drugs, the UCSA, through its generally applicable laws against possession or attempted possession of all controlled substances, imposes criminal penalties on those who, in the words of the City's forfeiture ordinance, "acquire or attempt to acquire any controlled substance." (Stockton Mun. Code, § 5-1000.)

enjoin and abate the declared [vehicular] nuisance by ordering the defendant not to use the vehicle again," and it allows for the forcible removal of vehicles. Under subdivision (c) of section 22659.5, any action taken to abate a public nuisance is limited to those "specified in subdivision (b)," that is, an injunction against or abatement of a declared nuisance or the removal of a nuisance vehicle. Section 22659.5 contains no language, however, that would allow a local entity such as the City here to seize and forfeit a vehicle that, through its use in soliciting prostitution, has created a public nuisance.

We summarize: Vehicle Code section 21 precludes local regulation of "matters covered" by the Vehicle Code, absent express legislative authorization. The use of vehicles in soliciting prostitution is a matter that the Vehicle Code covers in section 22659.5, which establishes a five-year pilot program under which cities and counties may treat as a public nuisance any vehicle used in soliciting prostitution, but that pilot program does not allow for forfeiture of the vehicle. There being no express legislative authorization for any other form of local regulation of the matter covered by Vehicle Code section 22659.5, Vehicle Code section 21 precludes an ordinance like the City's, which seeks to regulate vehicle use in soliciting prostitution by requiring forfeiture of the vehicle. Under Vehicle Code section 21, therefore, the City's ordinance is *expressly preempted* by state law.

In addressing a similar ordinance adopted by the City of Oakland, the Court of Appeal in *Horton v. City of Oakland, supra,* 82 Cal.App.4th 580, reached a contrary conclusion. First, asking whether Vehicle Code section 22659.5 had *impliedly* preempted the Oakland ordinance allowing forfeiture of any vehicle used to solicit prostitution, *Horton* concluded it had not, because Oakland had not adopted the five-year pilot program authorized by that statute. (*Horton, supra,* 82 Cal.App.4th at p. 589.) *Horton* then considered whether there was *express* preemption under Vehicle Code section 21. As we have seen, absent express legislative authorization of local regulation in a legal area, Vehicle Code section 21 prohibits such regulation pertaining to any "matters" covered by the Vehicle Code. And section 22659.5 of the Vehicle Code specifically covers abatement of public nuisance vehicles used to solicit prostitution, the same subject of the Oakland ordinance at issue in *Horton.* But *Horton* reasoned that because Vehicle Code section 22659.5 allowed local entities to abate as a public nuisance any vehicle used to solicit prostitution only if the local entity participated in "an optional and limited pilot program" authorized by section 22659.5, that state statute, according to *Horton,* did not cover the same subject as the Oakland ordinance, which was not based on the pilot program. (*Horton, supra,* 82 Cal.App.4th at p. 591.) We disagree.

Vehicle Code section 22659.5, and the vehicle forfeiture ordinances in this case and in *Horton v. City of Oakland, supra,* 82 Cal.App.4th 580,

both address the same subject: abatement of a public nuisance created by vehicles used in soliciting prostitution. As the Court of Appeal here noted, the purpose of the state Legislature's enactment of section 22659.5 was to ascertain through a five-year pilot program " 'whether declaring motor vehicles a public nuisance when used in the commission of acts of prostitution would have a substantial effect upon the reduction of prostitution in neighborhoods, thereby serving the local business owners and citizens of our urban communities.' " (Quoting Stats. 1993, ch. 485, § 1, pp. 2595–2596.) Because the Vehicle Code addresses the same subject—nuisance abatement of vehicles used to solicit prostitution—as the City's ordinance at issue, and the state Legislature has in no other statute provided for local regulation in this area, the City's ordinance is preempted by state law.[3]

We also reject the City's characterization of Vehicle Code section 22659.5 as a "special statute" that cannot support a claim of preemption, because such claims must be "founded upon a 'conflict with *general laws*' " (*Baldwin v. County of Tehama* (1994) 31 Cal.App.4th 166, 177 [36 Cal.Rptr.2d 886], italics added). Vehicle Code section 22659.5 allows, but does not require, a city or a county to adopt an ordinance declaring vehicles used in specified sex offenses to be a public nuisance in accord with the terms of the statute. But this statute is, contrary to the City's contention, a general rather than a special law because it applies generally throughout the state; it is not limited to certain listed cities and counties. Thus, Vehicle Code section 22659 cannot be characterized as special legislation. (See Cal. Const., art. IV, § 16 [authorizing the enactment of statutes applicable to particular cities or counties]; *White v. State of California* (2001) 88 Cal.App.4th 298, 305 [105 Cal.Rptr.2d 714] [Legislature must have rational basis for singling out a city or county to be " 'affected by [a special] statute' "]; *Baldwin, supra,* at p. 177 [uncodified enactments granting limited powers over groundwaters to "specifically identified special districts" described as " 'special acts' "].)

We now turn to the City's arguments made in overall support of its vehicle forfeiture ordinance. According to the City, the ordinance does not conflict with any state law, and therefore a necessary precondition to state preemption is lacking. We disagree. As discussed earlier, the ordinance conflicts with state law because anyone using a vehicle "to solicit an act of prostitution, or to acquire or attempt to acquire any controlled substance" (Stockton Mun. Code, § 5-1000)—conduct exclusively within the purview of state law—is subject to penalties in excess of those prescribed by the Legislature.

The City also argues that because it operates under a charter rather than under the general laws governing California cities and therefore meets the

---

[3] To the extent it is contrary to our conclusions here, we disapprove *Horton v. City of Oakland, supra,* 82 Cal.App.4th 580.

requirement of Government Code section 34101 for a "chartered city," our state Constitution allows it to adopt and enforce ordinances in conflict with state law so long as the subject matter constitutes a "municipal affair[]" rather than a "statewide concern." (See Cal. Const., art. XI, § 5; *Johnson v. Bradley* (1992) 4 Cal.4th 389, 399 [14 Cal.Rptr.2d 470, 841 P.2d 990].) The City asserts that its vehicle forfeiture ordinance deals with a municipal affair, namely, abating the nuisance caused by vehicular traffic associated with the "illicit commercial activity" of obtaining drugs or soliciting prostitution within the City's boundaries. We are not persuaded, as explained below.

 The illicit commercial activities—prostitution and trafficking in controlled substances—that are the focus of the City's vehicle forfeiture ordinance are matters of statewide concern that our Legislature has comprehensively addressed through various provisions of this state's Penal and Vehicle Codes, leaving no room for further regulation at the local level. One of the lesser harms associated with these crimes is the traffic congestion that may result when vehicles are used to solicit acts of prostitution or to buy or sell drugs illegally on city streets. Although traffic congestion is a local problem that cities ordinarily are authorized to address, they may not do so by means of an ordinance that, by allowing forfeiture of a vehicle used to commit a specific state law violation, impinges on an area fully occupied or exclusively covered by state law.[4]

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Werdegar, J., and Moreno, J., concurred.

**CORRIGAN, J., Dissenting.**—I respectfully dissent from the opinion of my colleagues.

The ordinance at issue is a practical and responsible attempt by the City of Stockton (Stockton) to address problems it, and many other cities face on a daily basis. The ordinance speaks to a narrow, pressing and quite real local concern. Street commerce in drugs and sex forces innocent people to share their neighborhoods with pimps, prostitutes, and drug dealers who use their streets as a bazaar for illegal transactions.

Article XI, section 7 of the California Constitution provides, "[a] county or city may make and enforce within it limits all local, police, sanitary, and

---

[4] Because the determination to preclude or to allow local regulation in a field addressed by state law resides exclusively with the state Legislature, that body can, of course, expressly authorize local entities to enact ordinances such as the one in this case that we conclude is preempted under existing law.

other ordinances and regulations not in conflict with general laws." Article XI, section 5 of the California Constitution, commonly referred to as the "home rule" doctrine, "reserves to charter cities the right to adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a 'municipal affair' rather than one of 'statewide concern.' [Citation.]" (*Horton v. City of Oakland* (2000) 82 Cal.App.4th 580, 584–585 [98 Cal.Rptr.2d 371] (*Horton*).) "[W]hen local government regulates in an area over which it traditionally has exercised control, . . . California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].)

In deciding whether a local ordinance enacted by a charter city, like Stockton, is valid, we apply the following analysis: " 'First, a court must determine whether there is a genuine conflict between a state statute and a municipal ordinance. [Citations.] Only after concluding there is an actual conflict should a court proceed with the second question; i.e., does the local legislation impact a municipal or statewide concern?' [Citation.] Courts should avoid making unnecessary choices between competing claims of municipal and state governments 'by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other.' [Citation.] In other words, the preemption question begins with an inquiry into the existence of a conflict. If there is no conflict, the home rule doctrine is not brought into play." (*Horton, supra,* 82 Cal.App.4th at p. 585.)

The majority relies on the California Uniform Controlled Substances Act (UCSA) (Health & Saf. Code, § 11000 et seq.) in reaching its conclusion that Stockton's ordinance is preempted because of a conflict. It views the UCSA as so comprehensive in nature "as to manifest the Legislature's intent to preclude local regulation." (Maj. opn., *ante,* at p. 1071.) The majority's reasoning, if accepted, requires preemption on an all-encompassing basis.

Unlike the majority, I cannot conclude that the overall structure of the UCSA "manifests a clear intent" to limit the penalty of vehicle forfeiture to "very serious drug crimes involving the manufacture, sale, or possession for sale of" drugs. (Maj. opn., *ante,* at p. 1072.) The Legislature has authorized a state prison sentence of up to three years for the simple possession of even a small amount of certain drugs. (Health & Saf. Code, § 11350; Pen. Code, § 18.) It is difficult to conclude that the Legislature intended to deprive a person of freedom for simple possession, but intended to protect an automobile from forfeiture in only very serious cases of drug manufacture and sale.

Certainly the Legislature has not said that was its intent and no legislative history[1] has been cited to support that conclusion. Unlike the majority, I do not discern a conflict between the UCSA and Stockton's ordinance.

In fact, "the [UCSA] is silent with regard to vehicles used by drug *buyers*." (*Horton, supra,* 82 Cal.App.4th at p. 586, fn. omitted.) Stockton has included these vehicles in its nuisance abatement program in an attempt to alleviate the concerns of its residents. Thus, rather than creating a conflict, Stockton's ordinance covers an area undisturbed by the UCSA.

Also, Stockton's ordinance does not conflict with provisions of the Vehicle Code. The majority relies on Vehicle Code section 21, which states, "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein." The majority next refers to Vehicle Code section 22659.5, which authorizes a city to "adopt an ordinance establishing a five-year pilot program that implements procedures for declaring any motor vehicle a public nuisance" used in soliciting prostitution. (See maj. opn., *ante,* at p. 1073, italics omitted.) The majority concludes that because Vehicle Code section 22659.5 covers nuisance abatement of vehicles used in soliciting prostitution and "does not allow for forfeiture of the vehicle," Stockton's ordinance is preempted under the provisions of Vehicle Code section 21. (Maj. opn., *ante,* at p. 1074.)

I disagree. The provisions of Vehicle Code section 22659.5 merely authorize "an optional and limited pilot program." (*Horton, supra,* 82 Cal.App.4th at p. 591.) Vehicle Code section 22659.5 "does not preclude local governments from enacting other provisions if they decide not to adopt the proffered pilot program." (*Horton,* at p. 589.) Like the Oakland ordinance in *Horton,*

---

[1] In *Horton, supra,* 82 Cal.App.4th at page 588, the court rejected an argument that it should "retroactively infer . . . preemptive intent from recent legislative activity" based on the Legislature's passage of Assembly Bill No. 662 (1999–2000 Reg. Sess.). That bill amended Health and Safety Code section 11469 et seq. "to include forfeitures under the criminal profiteering statute. The bill also declared the Legislature's intent that forfeiture law be exclusive of any local ordinance or regulation, declaring the subject a matter of statewide concern." (*Horton,* at p. 588.) The Governor vetoed Assembly Bill No. 662 explaining, " '[i]t is not appropriate for the State to take away the tools from Oakland, Sacramento, and other cities considering the adoption of similar ordinances without a more careful analysis of the amount of discretion which should be left to cities to craft their own remedies in response to local conditions.' " (*Horton,* at p. 588.) The court concluded, "Thus the bill's statement that '[t]he provisions of this section are a clarification and declaration of existing law' is far from definitive. A 'clear indication' is one which needs no further elucidation. The Legislature's perceived need to 'clarify' demonstrates that the statute as drafted fails to provide the clear indication required to preempt by implication." (*Ibid.*)

Stockton's ordinance "was not enacted pursuant to section 22659.5, [therefore] it is not constrained by the procedural requirements of that statute." (*Ibid.*, fn. omitted.) Thus, Stockton's ordinance does not conflict with state law. The ordinance does not interfere with the operation of state law as it is not "inimical" to its provisions in the relevant sense, and it "does not prohibit what the statute commands or command what it prohibits." (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 902 [16 Cal.Rptr.2d 215, 844 P.2d 534].)

This court has counseled that we should carefully ensure "that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 17 [283 Cal.Rptr. 569, 812 P.2d 916].) Contrary to the majority, I would hold that there is no conflict between state law and Stockton's ordinance.

In addition, assuming there is a conflict with state law, because Stockton is a charter city, it argues that its ordinance addresses a municipal affair: nuisance abatement. Stockton urges that the ordinance's forfeiture provisions are necessary to reduce the urban blight and traffic caused by prostitution and drug dealing. The majority summarily rejects this argument holding that although traffic congestion is a harm associated with these crimes, illicit commercial activities such as prostitution and drug trafficking are matters of statewide concern. (Maj. opn., *ante*, at p. 1076.)

The majority quotes our opinion in *Big Creek Lumber Co. v. County of Santa Cruz, supra*, 38 Cal.4th 1139, for the rule that when a local government regulates an area in which it traditionally exercised control, courts will presume that the regulation is not preempted by state statute, absent the Legislature's clear intention to preempt. (*Id.* at p. 1149; see maj. opn., *ante*, at p. 1069.) The majority fails to follow this rule. It cannot be said that when the Legislature enacted the UCSA and Vehicle Code, it intended to invalidate local nuisance ordinances targeting the urban blight created by drug trafficking and prostitution.

The majority also relies on *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239 [23 Cal.Rptr.3d 453, 104 P.3d 813] (*American Financial*), where we concluded that a statutory scheme that regulated predatory lending practices preempted an Oakland ordinance that purported to regulate predatory lending practices in the Oakland home mortgage market. In that case, we found it significant that "the Legislature was not suddenly entering an area previously governed by municipalities," but instead was addressing a subject matter that historically has been regulated "at the state, not the municipal, level." (*Id.* at p. 1255.)

Here, by contrast, Stockton passed an ordinance aimed at nuisance abatement, a traditionally local police power.[2] (*People v. Johnson* (1954) 129 Cal.App.2d 1, 6 [277 P.2d 45] ["[a] city has the power to pass general police regulations to prevent nuisances"]; see also *The City of Oakland v. Williams* (1940) 15 Cal.2d 542, 549 [103 P.2d 168] [cities "possess the necessary police power, both under constitutional grant and under their respective charters, to abate nuisances"].) In acknowledging what constitutes a "nuisance," the Civil Code defines the term broadly as including "[a]nything which is injurious to health, including, *but not limited to*, the illegal sale of controlled substances," or anything that is "indecent or offensive . . . so as to interfere with the comfortable enjoyment of life or property," or anything that "unlawfully obstructs the free passage or use, in the customary manner, of any . . . public park, square, street, or highway . . . ." (Civ. Code, § 3479, italics added; see also Civ. Code, § 3480 ["[a] public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal"].) Therefore, the traditionally local nature of nuisance regulation distinguishes this case from the situation presented in *American Financial, supra*, 34 Cal.4th 1239.

The majority does not address the compelling problem of urban blight for the poor and elderly, which is immediate, significant, and certainly a local concern. The aged homeowner who must shut herself inside while drug transactions are conducted in her front yard, and the parents who must walk their children to school while commercial sex acts are performed in cars parked at the curb pay a heavy and very local price. Not all Californians confront these problems, but those who do have a pressing and localized need for protection.

It should not be the case that local governments require the permission of the state to protect their own citizens from nuisances that profoundly affect their quality of life and the quiet enjoyment of their own property.

---

[2] The majority relies on *In re Lane* (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897], in support of its conclusion that the UCSA thoroughly "occupies the field of penalizing crimes involving controlled substances." (Maj. opn., *ante*, at p. 1071.) *Lane* is distinguishable. It involved a statewide statutory scheme providing comprehensive criminal proscriptions against specified sexual conduct. *Lane* held void a local ordinance that appears quaint nearly 50 years later, which purported to criminalize sexual intercourse between unmarried persons.

This case involves a completely different situation. Here, Stockton's ordinance attempts to address the problems caused by drug dealing and prostitution, activities the city understandably views as public nuisances. (Civ. Code, §§ 3479, 3480, 3491.)

Accordingly, I would reverse the judgment of the Court of Appeal.[3]

Baxter, J., and Chin, J., concurred.

Respondents' petition for a rehearing was denied October 10, 2007. Baxter, J., Chin, J., and Corrigan, J., were of the opinion that the petition should be granted.

---

[3] I believe the distinctions drawn in *Horton, supra*, 82 Cal.App.4th 580, are sound and should be adopted. *Horton* specifically left open the due process question raised by ordinances that impose a reduced burden of proof and the authorization of a one-year timeframe before requiring notice and providing an opportunity for challenging the forfeiture. These procedural provisions are worthy of careful scrutiny.