[No. F053706. Fifth Dist. Apr. 1, 2008.]

RANDY TOSI et al., Plaintiffs and Respondents, v.
COUNTY OF FRESNO et al., Defendants and Appellants.

OLIVERIO HERRERA et al., Plaintiffs and Respondents, v.
COUNTY OF FRESNO et al., Defendants and Appellants.

COUNSEL

Dennis A. Marshall, County Counsel, and J. Wesley Merritt, Chief Deputy County Counsel, for Defendants and Appellants.

Michael J. F. Smith for Plaintiffs and Respondents Randy Tosi and Bruno's Iron & Metal.

Gilmore, Wood, Vinnard & Magness, David M. Gilmore and Jody L. Winter for Plaintiffs and Respondents Oliverio Herrera and George Thomas.

The Flanigan Law Firm, Timothy Flanigan; Scott Horne and Danielle F. Waterfield for Institute of Scrap Recycling Industries as Amicus Curiae on behalf of Plaintiffs and Respondents.

OPINION

**VARTABEDIAN, Acting P. J.**—Fresno County, its district attorney, and its sheriff appeal from a preliminary injunction prohibiting them from enforcing certain portions of the county's ordinances regulating scrap metal dealers because the ordinances are preempted by state law. Concluding the trial court did not abuse its discretion under the relevant standards, we will affirm the order in question.

### Facts and Procedural History

State law regulates the conduct of "junk dealers." Business and Professions Code[1] sections 21600 through 21609 require recordkeeping (§ 21606), record preservation (§ 21607), and cooperation with local law enforcement agencies in permitting inspection of the records (§ 21606.5). Other related sections provide definitions and exclusions to coverage. (See §§ 21601, 21604,

---

[1] All further undesignated section references are to the Business and Professions Code.

21605.) The Business and Professions Code provides that violation of these requirements is a misdemeanor (§ 21608); the code permits a peace officer who has probable cause to believe scrap metal is stolen to place a temporary hold on such property (§ 21609).[2] The portions of the Business and Professions Code relevant to the present case, which we will discuss in more detail below, were enacted in 1989. (See Stats. 1989, ch. 1288, p. 5079.)

Fresno County has long required a business license for junk dealers, including scrap metal dealers. (See Fresno County Ord. Code, § 6.24.020 et seq.)[3] The licensing scheme primarily requires the sheriff to determine whether the applicant is likely to deal in stolen property and zoning officials to determine whether the proposed business location is appropriate. (*Id.*, § 6.24.040.) It also requires certain recordkeeping by such dealers (*id.*, § 6.24.110) and requires dealers to hold property for up to five days if directed by the sheriff to do so (*id.*, § 6.24.130).

In 2007, Fresno County enacted certain ordinances to further regulate junk dealers. Although there is no statement of legislative intent in the ordinances, declarations submitted in opposition to the motion for preliminary injunction state that thefts of metal wiring and irrigation parts from local farms were causing far more damage than the metal was worth. The deputy district attorney who drafted the ordinances stated they were based on "a pending bill in Arizona." (See Ariz. Rev. Stats., § 44-1644.) The ordinances in question, insofar as involved in the present case, may be summarized as follows: Ordinance section 6.24.120 requires junk dealers to provide to the sheriff on a weekly basis invoices describing in detail all transactions they made, both purchases and sales. Ordinance section 6.24.125 requires junk dealers to hold for five days after a transaction is reported to the sheriff "all nonferrous metal and stainless steel (with the exclusion of used beverage containers) in the same size, shape and condition in which it was received." Ordinance section 6.24.135 provides that junk dealers must pay for scrap metal, excluding used

---

[2] Penal Code section 496a also makes it a crime for a dealer in junk to buy certain metals typically used by railroads and public utilities without first "using due diligence to ascertain that the person selling or delivering the same has a legal right to do so." Violation is punishable as a felony or a misdemeanor. (Pen. Code, § 496a, subd. (a).)

[3] All further references to Ordinance sections refer to the Fresno County Ordinance Code unless otherwise stated. The county ordinance governs junk dealers, secondhand dealers and antique dealers, and the ordinance is generally applicable to all three occupations. "Junk dealer" is defined to include dealers in "scrap metal valuable only for recycling." (Ord., § 6.24.010, subd. F.) Some of the ordinances challenged in the present case are applicable only to junk dealers. (See Ord., § 6.24.125.)

beverage containers, "by check sent by U.S. mail to a physical address provided on the seller's driver's license or other identification recorded in the transaction record, no sooner than three days after the transaction."

Soon after the ordinances were adopted, respondents filed their action for declaratory and injunctive relief.[4] Appellants County of Fresno, Fresno County District Attorney Elizabeth Egan, and Fresno County Sheriff Margaret Mims were named as defendants. Over appellants' opposition, the court granted a temporary restraining order prohibiting enforcement of the new ordinances, sections 6.24.120, subdivision 4, 6.24.125, and 6.24.135. On August 13, 2007, the court granted respondents' application for preliminary injunction.

Appellants filed a timely notice of appeal and requested calendar preference as provided by statute. (Code Civ. Proc., § 527, subd. (e); Cal. Rules of Court, rule 8.240.)

## Discussion

This is an appeal from a preliminary injunction. Appellants' opening and reply briefs neither discuss nor even mention the standard of review applicable to appeals from the grant of a preliminary injunction. Normally, issuance of a preliminary injunction is entrusted to the discretion of the trial court and we review only for abuse of discretion. (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].) The trial court is required to weigh both "how likely it is that the moving party will prevail on the merits" and "the relative harm the parties will suffer in the interim due to the issuance or nonissuance of the injunction." (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420 [130 Cal.Rptr.2d 385].)

Appellants do not contend that the trial court abused its discretion or that it erred in finding that the balance of hardship to each of the parties required issuance of the preliminary injunction. Therefore we will assume appellants mean to assert that, pursuant to cases such as *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396 [74 Cal.Rptr.2d 712], the trial court abused its discretion because respondents cannot prevail on the ultimate merits of the case as a matter of law. In that limited circumstance,

---

[4] Respondents Randy Tosi and Bruno's Iron and Metal filed case No. 07CECG 02208. Respondents Oliverio Herrera and George Thomas filed case No. 07CECG 02847. The trial court ordered the cases consolidated for all purposes.

the balance of hardships is irrelevant and the grant of a preliminary injunction would merely delay the inevitable enforcement of the ordinances. (*Id.* at p. 1408.) We proceed on this understanding of appellants' claim.

■ "Our state Constitution allows cities and counties to enact and enforce local ordinances so long as they are 'not in conflict' with the state's 'general laws.' (Cal. Const., art. XI, § 7.) Any conflicting ordinance is preempted by state law and thus void." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1065 [63 Cal.Rptr.3d 67, 162 P.3d 583] (*O'Connell*).)

■ An ordinance can conflict with state law in any of several ways: A conflict exists if the local legislation duplicates or contradicts general law or if the local legislation attempts to enter an area fully occupied by general law. (*O'Connell, supra*, 41 Cal.4th at p. 1067.) An area can be "fully occupied by general law" either because the Legislature has expressly prohibited further local legislation or because the state legislative scheme implies such a prohibition. (*Ibid.*)

Nevertheless, "when local government regulates in an area over which it traditionally has exercised control, such as the location of particular land uses, California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].) In addition to land use regulation, licensing of local businesses is an area over which local government traditionally has exercised control. (See § 16100.)

The ordinance provisions at issue here do not involve licensing or location of recycling businesses. Instead, they impermissibly attempt to govern the purchase and sale of scrap metal, a subject comprehensively regulated by state law. As the trial court concluded, the ordinances duplicate and contradict state law and concern an area fully occupied by state law; the ordinances are therefore preempted. We reach this conclusion by comparison of two Supreme Court cases discussing preemption, *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893 [16 Cal.Rptr.2d 215, 844 P.2d 534] (*Sherwin-Williams*) and *O'Connell, supra*, 41 Cal.4th 1061.[5]

---

[5] In both of the cited cases, there were discussions about express legislative permission for, and prohibition of, local laws addressing relevant areas. (See *O'Connell, supra*, 41 Cal.4th at p. 1074; *Sherwin-Williams, supra*, 4 Cal.4th at pp. 899–900.) Those issues were not dispositive of the portions of the cases discussed in the text and, because the present state laws are silent on the issue of preemption, we will not include the court's discussion of those issues. For similar reasons, cases such as *Malish v. City of San Diego* (2000) 84 Cal.App.4th 725, 729 [101 Cal.Rptr.2d 18] ("Business and Professions Code sections 21637 and 21638 expressly recognize and authorize local regulation of pawnbrokers . . . .") do not aid resolution of the present issues.

In *Sherwin-Williams*, state law had restricted sales of spray paint to minors. (*Sherwin-Williams, supra*, 4 Cal.4th at pp. 898–899.) The City of Los Angeles adopted an ordinance requiring retailers to display spray paint in an area not accessible to the public without employee assistance. (*Id.* at p. 901.) The local ordinance sought neither to restrict nor to permit sale of spray paint. The court held that the ordinance did not conflict with the statute because the laws covered entirely different subjects, the secured storage of spray paint, on the one hand, and the lawfulness of the sale of such paint to minors, on the other. (*Id.* at p. 905.)

In *O'Connell*, state law provided for forfeiture of vehicles used in certain serious drug transactions (*O'Connell, supra*, 41 Cal.4th at p. 1071) and for court orders declaring a nuisance vehicles used in prostitution (*id.* at pp. 1074–1075). The city adopted an ordinance permitting forfeiture of any vehicle used to acquire any controlled substance or to solicit any act of prostitution. (*Id.* at p. 1069.) In essence, the city made a legislative judgment that state law did not go far enough in combating these vices in the city. (See *id.* at pp. 1077–1078 (dis. opn. of Corrigan, J.).) In *O'Connell*, the court held the local laws conflicted with state law, as follows:

In the case of drug offenses, state law (see Health & Saf. Code, § 11470, subd. (e)) permits forfeiture only when it is proved beyond a reasonable doubt that the vehicle was " 'used as an instrument to facilitate the manufacture of, or possession for sale or sale' " of certain larger amounts of designated controlled substances. (*O'Connell, supra*, 41 Cal.4th at p. 1070.) Because the state forfeiture provisions were both narrowly tailored and part of a comprehensive scheme of penalties for drug offenses, state law preempted the city's attempt to broadly permit forfeiture upon a showing by preponderance of evidence that the vehicle was used to attempt to acquire any amount of any controlled substance. (*Id.* at p. 1071.)

In the case of prostitution, state law (Veh. Code, § 22659.5) permitted local adoption of five-year "pilot programs" for declaring any motor vehicle a public nuisance when used in the commission of certain specified crimes, including prostitution. (*O'Connell, supra*, 41 Cal.4th at p. 1073.) That law did not, however, contain any language that permitted forfeiture of vehicles as part of a local pilot program. (*Id.* at p. 1074.) Accordingly, the city's ordinance impermissibly attempted to impose penalties "in excess of those prescribed by the Legislature" for the same conduct. (*Id.* at p. 1075.)

██ Thus, in summary, the local law in *Sherwin-Williams* did not conflict with state law—and was not preempted—because the ordinance did "not prohibit what the statute commands or command what it prohibits." (*Sherwin-Williams, supra,* 4 Cal.4th at p. 902.) The local laws in *O'Connell* did conflict with state law—and were preempted—because they imposed the penalty of forfeiture in circumstances in which state law comprehensively regulated the conduct but did not impose that penalty. (*O'Connell, supra,* 41 Cal.4th at pp. 1071, 1075.)

In a letter to Governor George Deukmejian requesting that he sign Senate Bill No. 1475 (1989–1990 Reg. Sess.) into law, the bill's author, Senator Don Rogers, described a statewide "epidemic" of theft of recyclable scrap metal, particularly in rural and agricultural areas.[6] Senator Rogers aptly summarized the legislation as follows: "SB 1475 would require recyclers as well as junk dealers to keep specific records on their purchases thus giving law enforcement a paper trail to the thief. To avoid unnecessary paperwork, excluded from this recordkeeping are (1) aluminum beverage containers, (2) household generated junk, (3) materials for which payment is made by check written to the company represented as being the owner, and (4) materials purchased from another junk dealer or recycler who has already recorded, reported, and held the material as required." The legislation thus presents a comprehensive scheme that has sought to balance the burden on legitimate businesses with the benefits to be conferred on law enforcement and, by extension, potential victims of metal theft. (See *O'Connell, supra,* 41 Cal.4th at p. 1071.)

██ In the present case, the County of Fresno apparently determined that the state legislation did not go far enough in regulating the conduct of scrap metal dealers. Because the ordinances regulate in a more restrictive manner the very conduct regulated in state law, the ordinances impermissibly conflict with state law. (See *O'Connell, supra,* 41 Cal.4th at p. 1075.)

██ First, state law requires recyclers to create sales records and make them available for inspection by certain law enforcement officers. (§ 21606.5.) Fresno County's ordinance not only requires that recyclers create records, but requires that the record be on a form approved by the sheriff; not only requires retention of a copy of the record, but also requires the recycler to submit those records to the sheriff on a weekly basis; and not only requires the recycler to collect the identifying information required by section 21606,

---

[6] After notification to the parties, we take judicial notice of the letter of Senator Rogers to the Governor dated September 15, 1989. (See Evid. Code, §§ 452, subd. (h), 459.)

but also to obtain a thumbprint of each seller of junk. (Ord., § 6.24.120.) Any violation of these local requirements can result in suspension or revocation of the recycler's license, even if the acts are not required by state law. (Ord., § 6.24.150.)

Second, a recycler's sale and disposition of scrap metal can be delayed for up to 90 days upon the direction of a peace officer who has probable cause to believe that the material is stolen. (§ 21609.) Fresno County's ordinance not only omits the requirement of probable cause, but also requires recyclers to retain all materials for five days even in the absence of a request from a peace officer. (Ord., § 6.24.125, subd. A.) Thus, the ordinance prohibits a recycler from disposing of property in circumstances where such disposal is permitted by state law and permits suspension or revocation of the recycler's license even if the acts are not prohibited by state law. (Ord., § 6.24.150.)

■ Finally, state law excludes from the requirements for detailed record-keeping any purchase of scrap metal in which the buyer pays the seller by check payable to the "company represented as being the owner of the scrap." (§ 21604, subd. (b).) Fresno County's ordinance not only attempts to override this exclusion by requiring detailed recordkeeping for all purchases of scrap metal, but it also requires all purchases to be made by check, mailed to the seller, at least three days after the transaction. (Ord., § 6.24.135.) Thus, the ordinance requires conduct (more detailed recordkeeping and check transactions) where the statute does not and forbids conduct (cash transactions) permitted by the statute.

We conclude that the commercial activities—the purchase of scrap metal by recyclers—that are the focus of Fresno County's ordinances "are matters of statewide concern that our Legislature has comprehensively addressed through various provisions of this state's Penal and [Business and Professions] Codes, leaving no room for further regulation at the local level." (*O'Connell, supra,* 41 Cal.4th at p. 1076.) The trial court did not abuse its discretion in preliminarily enjoining the enforcement of the subject ordinances.

## Disposition

The judgment (order) is affirmed. Respondents are awarded costs on appeal.

Cornell, J., and Gomes, J., concurred.