TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 21-1001 |
| of | : | |
| | : | March 20, 2024 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

The HONORABLE ROBERT H. PITTMAN, SONOMA COUNTY COUNSEL, has requested an opinion on questions relating to regulation of pesticides in California's "coastal zone."

**QUESTIONS PRESENTED AND CONCLUSIONS**

1. May a county adopt ordinances to regulate the use of pesticides in the coastal zone to implement Local Coastal Program requirements?

No. Food and Agricultural Code section 11501.1 expressly preempts local ordinances regulating "the registration, sale, transportation, or use of pesticides." Ordinances violating this restriction are "void and of no force or effect." Given this broad preemption, a county may not adopt ordinances or other laws of general application to regulate the use of pesticides, even to implement Local Coastal Program requirements, unless it obtains approval from the Department of Pesticide Regulation under Agricultural Code section 11503.

2. May a county take other actions—legislative, regulatory or otherwise—to address the environmental impacts of pesticide use in a Local Coastal Program without violating Food and Agricultural Code section 11501.1?

1

Yes.  Although a county may not adopt ordinances or other laws of general application that purport to regulate the use of pesticides in the coastal zone absent approval from the Department of Pesticide Regulation, it may take certain other actions—legislative, regulatory or otherwise—to address the environmental impacts of pesticide use in the coastal zone without violating section 11501.1.  For example:

- In deciding whether to grant an individual land-use development permit for a particular site, a county may condition the permit on site-specific restrictions on pesticide use.

- A county may adopt policies or regulations aimed at reducing the need for pesticide use in the first instance, such as sanitary rules for the reduction of rodents and other pests.

- A county may adopt policies or regulations that mitigate the local post-use effects of pesticides, such as by requiring training and certification in methods of cleaning that minimize the leaching of pesticides after they have been used.

- Similarly, a county may publish recommendations or advisory policies encouraging best practices regarding pesticide use or alternatives to pesticide use.

- And a county may restrict the use of pesticides by its own employees in the course of their work, or on property owned by the county, so long as those restrictions apply only to county operations and do not purport to impose generally applicable restrictions throughout the county.

## BACKGROUND

In this opinion, we consider whether a county may adopt ordinances to regulate the use of pesticides, or otherwise adopt policies to address the environmental impacts of pesticides, in the coastal zone to implement a Local Coastal Program under the California Coastal Act.  We begin by reviewing the applicable legal principles.

State law preempts local government attempts to prohibit or regulate the registration, sale, transportation, or use of pesticides without the approval of the Department of Pesticide Regulation.  California's Food and Agricultural Code establishes a statutory scheme governing the use of pesticides.[1]  Its purposes include protecting public health, worker safety, and the environment; authorizing the issuance of permits for

---

[1] Food & Agr. Code, §§ 11401-14103.

2

controlled pesticide use; ensuring proper labeling of pesticides; and encouraging the development of less harmful pest control methods.[2]

To further these purposes, the Legislature has established the Department of Pesticide Regulation within the California Environmental Protection Agency.[3] The Department's mission is to protect the environment and human health by regulating pesticides and by supporting integrated pest management.[4]

Food and Agricultural Code section 11501.1 places statewide responsibility for pesticide regulation in the hands of the Department. Subdivision (a) preempts any local ordinance or regulation that prohibits or attempts to regulate the "registration, sale, transportation, or use" of pesticides:

> (a) This division and Division 7 (commencing with Section 12501) are of statewide concern and occupy the whole field of regulation regarding the registration, sale, transportation, or use of pesticides to the exclusion of all local regulation. Except as otherwise specifically provided in this code, no ordinance or regulation of local government, including, but not limited to, an action by a local governmental agency or department, a county board of supervisors or a city council, or a local regulation adopted by the use of an initiative measure, may prohibit or in any way attempt to regulate any matter relating to the registration, sale, transportation, or use of pesticides, and any of these ordinances, laws, or regulations are void and of no force or effect.[5]

Subdivision (b) provides that, if the Department's Director "determines that an ordinance or regulation, on its face or in its application, is preempted by subdivision (a), the director shall notify the promulgating entity that it is preempted by state law."[6] If the local entity does not repeal the preempted ordinance or regulation, then "the director shall maintain an action for declaratory relief to have the ordinance or regulation declared void and of no force or effect, and shall also bring an action to enjoin enforcement of the ordinance or regulation."[7]

---

[2] See *id.*, § 11501.

[3] *Id.*, § 11451.

[4] See *id.*, § 11454.

[5] *Id.,* § 11501, subd. (a).

[6] *Id.*, § 11501, subd. (b).

[7] *Ibid.*

21-1001

Section 11501.1 thus focuses on preventing local agencies from enacting local ordinances banning or otherwise regulating pesticide use, leaving the field clear for statewide control.  With respect to fellow state agencies, subdivision (c) states: "Neither this division [6, Pest Control Operations] nor Division 7 [Agricultural Chemicals, Livestock Remedies, and Commercial Feeds] is a limitation on the authority of a state agency or department to enforce or administer any law that the agency or department is authorized or required to enforce or administer."[8]

Although section 11501.1 generally prohibits local governments from enacting pesticide-related regulations or ordinances on their own, local governments are not powerless to shape the regulation of pesticides in their communities.  Specifically, Food and Agricultural Code sections 11503 and 11503.5 establish a process by which local governments may seek the Department's approval to adopt proposed local pesticide ordinances or regulations.  Those sections authorize a county agricultural commissioner to adopt such ordinances or regulations after review and approval by the director of the Department of Pesticide Regulation.[9]

**The California Coastal Act governs development in the coastal zone and provides for the local implementation of state policy objectives.**

Resource conservation is fundamentally important to the welfare of the people of California.[10]  The Legislature has adopted measures to protect various aspects of California's environment, including its air, water, fields, forests, wildlife, and—relevant here—its coastal areas.[11]  The questions presented for our analysis involve the "coastal zone," where development is governed by the California Coastal Act of 1976.[12]  To protect the delicately balanced ecosystem in the coastal zone, the Coastal Act seeks to conserve the natural environment and to ensure carefully planned development.[13]

---

[8] *Id.*, § 11501.1, subd. (c).

[9] *Id.*, §§ 11503, 11503.5.

[10] See Pub. Resources Code, § 9001, subd. (a).

[11] See 50 Cal.Jur.3d (2022) Pollution and Conservation Laws, § 1.

[12] Pub. Resources Code, § 30000 et seq.  "'Coastal zone' means that land and water area of the State of California from the Oregon border to the border of the Republic of Mexico . . . extending seaward to the state's outer limit of jurisdiction, including all offshore islands, and extending inland generally 1,000 yards from the mean high tide line of the sea. . . ."  (*Id.*, § 30103, subd. (a).)

[13] *Id.*, § 30000 et seq. (Coastal Act).

4

The Legislature designed the Coastal Act to align local land use zoning and planning with statewide policies, such as sustaining the biological productivity of coastal waters and preventing the disruption of sensitive habitat areas.[14] The Legislature charged the California Coastal Commission with responsibility for implementing the core goals of the Act, which are to:

(a) Protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources.

(b) Ensure orderly, balanced utilization and conservation of coastal zone resources taking into account the social and economic needs of the people of the state.

(c) Maximize public access to and along the coast and maximize public recreational opportunities in the coastal zone consistent with sound resources conservation principles and constitutionally protected rights of private property owners.

(d) Ensure priority for coastal-dependent and coastal-related development over other development on the coast.

(e) Encourage state and local initiatives and cooperation in preparing procedures to implement coordinated planning and development for mutually beneficial uses, including educational uses, in the coastal zone.

(f) Anticipate, assess, plan for, and, to the extent feasible, avoid, minimize, and mitigate the adverse environmental and economic effects of sea level rise within the coastal zone.[15]

The primary means of implementing the Coastal Act in a particular area is a Local Coastal Program, or LCP, which is a local government's legal framework for applying state coastal policies to the conditions existing within the local jurisdiction.[16] Public Resources Code section 30500(a) requires local governments to either prepare an LCP or to ask the Commission to do so on their behalf. In any case, section 30500(c) requires that the "precise content of each local coastal program shall be determined by the local government, in full consultation with the commission and with full public

---

[14] *Id.*, § 30001.5; see *id.,* §§ 30230 (marine environment), 30231 (water quality), 30240 (sensitive habitat), 30270 (sea level rise).

[15] *Id.*, § 30001.5.

[16] See *id.*, §§ 30500, 30519, 30600.

21-1001

participation."[17]  An LCP consists of land use plans, zoning maps, zoning ordinances, and other actions intended to ensure that local development is consistent with state coastal policies.[18]

A proposed LCP must be submitted to the Coastal Commission for review pursuant to a resolution adopted by the local government, after public hearing.[19]  After a local government presents its proposed LCP to the Commission, the Commission reviews the plan for conformity with the policies contained in the Coastal Act.[20]

Public Resources Code section 30512 states that the Commission, in reviewing the "land use plan" component of an LCP, "shall" certify the plan if it "meets the requirements of, and is in conformity with, the policies" set forth in Chapter 3 of the Coastal Act.[21]  The Commission's review of the plan "shall be limited to its administrative determination that the land use plan submitted by the local government does, or does not, conform with the requirements of" the Coastal Act.[22]  The Commission "is not authorized . . . to diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan."[23]

Similarly, a local government "shall" submit to the Commission for review "the zoning ordinances, zoning district maps, and . . . other implementing actions" that it proposes for carrying out its land use plan and that are otherwise necessary to implement its proposed LCP.[24]  But the Commission "may only reject ordinances, zoning district maps, or other implementing actions on the grounds that they do not conform with, or are inadequate to carry out, the provisions of the certified land use plan."[25]

Once the Commission certifies an LCP affecting a given area and all implementing actions within the area have become effective, the Commission delegates

---

[17] *Id.*, § 30500, subd. (c).

[18] See *id.*, §§ 30108.5, 30108.6, 30122; see generally *id.*, §§ 30210-30265.5 (state coastal policies).

[19] *Id.*, § 30510, subd. (a).

[20] *Id.*, §§ 30500, 30512, 30512.2.

[21] *Id.*, § 30512, subd. (c); see Coastal Act, ch. 3 (Coastal Resources Planning and Management Policies) § 30200 et seq.

[22] *Id.*, § 30512.2, subd. (a).

[23] *Ibid.*

[24] *Id.*, § 30513, subd. (a).

[25] *Id.*, subd. (b).

21-1001

its authority to issue coastal development permits to the local government that is implementing the LCP.[26] In that respect, it may be said that a certified Local Coastal Program is "not solely a matter of local law."[27] State and local authorities work in tandem to administer state policy governing development in the coastal zone.

**Submissions from interested parties**

We received a number of thoughtful submissions on whether, despite the preemptive language of Food and Agricultural Code section 11501(a), a county may adopt ordinances to regulate pesticides in the coastal zone to implement an LCP, or otherwise adopt policies in an LCP to address the environmental impacts of pesticides.[28] We summarize a few of those submissions here.

The Department of Pesticide Regulation stressed the preemptive effect of section 11501.1 on local government attempts to adopt ordinances that regulate the use of pesticides. It also identified several policy areas that fall outside the statute's preemptive reach. These include regulations that apply exclusively to a local agency's personnel and properties, advisory guidelines and other educational material, policies addressing the post-use effects of pesticides, and case-by-case decisions on applications for development permits.[29]

The California Coastal Commission also identified non-regulatory methods of policy making that are not preempted by section 11501.1, including rules that apply to the local agency itself, studies and education materials, regulations addressing the post-use

---

[26] *Id.*, § 30519, subd. (a). If there is no certified LCP covering the area where a development is proposed, or if the area lies within certain original jurisdiction areas, the authority to issue a coastal development permit remains with the Commission. (*Id.*, § 30519, subds. (a)-(b).)

[27] *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 794, quoting *Charles Pratt Const. Co., Inc. v. California Coastal Com.* (2008) 162 Cal.App.4th 1068, 1075.

[28] Office of the Sonoma County Counsel, letter to Attorney General's Office re: Opn. 21-1001, Oct. 12, 2021; League of California Cities, letter to Attorney General's Office re: Opn. 21-1001, Dec. 12, 2021; Mosquito and Vector Control Association of California, letter to Attorney General's Office re: Opn. 21-1001, Dec. 21, 2021; Department of Pesticide Regulation, letter to Attorney General's Office re: Opn. 21-1001, May 27, 2022; California Coastal Commission, letter to Attorney General re: Opn. 21-1001, May 31, 2022.

[29] Department of Pesticide Regulation, letter to Attorney General re: Opn. 21-1001, May 27, 2002, at pp. 4-5.

effects of pesticides, and case-by-case decisions on applications for development permits.[30] But the Commission's view of the preemptive scope of section 11501.1 differed from the Department of Pesticide Regulation's view. The Commission argued that local governments operating under the terms of a Commission-approved LCP are carrying out *state* law and policy, not local regulation subject to preemption under section 11501.1. It argued that, "Properly understood, Section 11501.1 should be interpreted to mean that local governments may not adopt *local* regulations on pesticides, but that they may regulate matters involving pesticides to the extent necessary to carry out *state* laws such as the Coastal Act."[31]

Similarly, in its request letter to the Attorney General, the Sonoma County Counsel argued that a certified LCP carries the status of state law. On that premise, the County Counsel reasoned that a pesticide ordinance in a certified LCP falls within section 11501.1(c), which states that section 11501.1 is not "a limitation on the authority of a state agency or department to enforce or administer any law that the agency or department is authorized or required to enforce or administer."[32]

We address these competing views below in analyzing the questions presented by the Sonoma County Counsel.

**ANALYSIS**

1. *May a county adopt ordinances that regulate pesticides in order to implement Local Coastal Program requirements?*

Article XI, section 7 of the California Constitution provides that a county or city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." But "local legislation that conflicts with state law is void."[33] A conflict exists when local legislation "duplicates, contradicts, or enters an area fully occupied by general law . . . ."[34]

---

[30] California Coastal Commission, letter to Attorney General re: Opn. 21-1001, May 31, 2022, at pp. 2-3, 9-11.

[31] *Id.* at p. 6; see *id.* at pp. 4-7.

[32] Sonoma County Counsel, letter to Attorney General re: Opn. 21-1001, Oct. 12, 2021, at pp. 3-4.

[33] *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743.

[34] *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.

21-1001

Local legislation duplicates state law when it is "coextensive" with state law, such as an ordinance imposing the same criminal prohibition that state law imposes.[35] Local legislation contradicts state law when it is "inimical to or cannot be reconciled" with state law, such as an ordinance setting the maximum speed limit for vehicles lower than that set by state law.[36] Local legislation enters a field fully occupied by state law either when the state statutory scheme expresses a legislative intent to occupy the field, or when the state statutory scheme "impliedly" occupies the field.[37]

We are dealing here with a question of express preemption. As mentioned, Food and Agricultural Code section 11501.1(a) expressly preempts local regulation of pesticides. The statute states its preemptive purposes in notably broad and emphatic terms. It emphasizes that Division 6 of the Food and Agricultural Code (addressing "Pest Control Operations") and Division 7 (addressing "Agricultural Chemicals, Livestock Remedies, and Commercial Feeds) are matters "of statewide concern and occupy the whole field of regulation regarding the registration, sale, transportation, or use of pesticides to the exclusion of all local regulation." It goes on to direct that "no ordinance or regulation of local government . . . may prohibit or in any way attempt to regulate any matter relating to the registration, sale, transportation, or use of pesticides, and any of these ordinances, laws or regulations are void and of no force or effect."

The terms "ordinance" and "regulation" are not specifically defined for purposes of this statute. A prominent dictionary definition of "regulation" is "an official rule or order, having legal force . . . ."[38] The definition of "ordinance" is somewhat more specific: "An authoritative law or decree; [specifically] a municipal regulation, [especially] one that forbids or restricts an activity."[39] And McQuillan's treatise on the Law of Municipal Ordinances provides that a local ordinance is commonly understood as a duly-enacted local law that prescribes "general, uniform and permanent rules of conduct" within the jurisdiction.[40] Altogether, the language of section 11501.1(a)

---

[35] *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067; *Sherwin-Williams Co. v. City of Los Angeles*, *supra*, 5 Cal.4th at pp. 897-898, citing *In re Portnoy* (1942) 21 Cal.2d 237, 240.

[36] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at p. 1068; *Sherwin–Williams Co. v. City of Los Angeles*, *supra*, 4 Cal.4th at p. 898, citing *Ex Parte Daniels* (1920) 183 Cal. 636, 641-648.

[37] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at pp. 1067-1068; *Sherwin–Williams Co. v. City of Los Angeles*, *supra*, 4 Cal.4th at p. 898.

[38] Black's Law Dictionary (11th ed. 2019), at p. 1325.

[39] Black's Law Dictionary (11th ed. 2019), at p. 1538.

[40] See McQuillin, *A Treatise on the Law of Municipal Ordinances* 2-3 (1904).

9

expresses a clear intention to prohibit local governments from adopting laws that ban or restrict pesticides.

In addition to the express language of section 11501.1(a), the provisions surrounding it underscore the significance of the preemption rule. As noted, section 11501.1(b) charges the Department of Pesticide Regulation with notifying local governments if they have adopted an ordinance that is preempted by section 11051.1(a) because it attempts to regulate pesticides.[41] If the local entity, after receiving notice that its pesticide measure is preempted by state law, "does not repeal its ordinance or regulation, the director shall maintain an action for declaratory relief to have the ordinance or regulation declared void and of no force or effect, and shall also bring an action to enjoin enforcement of the ordinance or regulation."[42] This directly enforces the Legislature's express intent that local governments may not unilaterally impose pesticide regulations.

The history of section 11501.1 also confirms that the Legislature intended it to have broad preemptive effect. The statute was adopted in 1984 with the express purpose of overturning the then-recent decision of the Supreme Court of California in *People ex rel. Deukmejian v. County of Mendocino*.[43] In that case, the Court had upheld a Mendocino County regulation prohibiting the aerial application of phenoxy herbicides against a claim that state law preempted the regulation.[44] An uncodified section of the 1984 statute states that "the intent of the Legislature by this act [is] to overturn the holding of *People ex rel. George Deukmejian v. County of Mendocino et al.*, and to reassert the Legislature's intention that matters relating to economic poisons [i.e., pesticides] are of a statewide interest and concern and are to be administered on a statewide basis by the state unless specific exceptions are made in state legislation for local administration."[45] In addition, legislative reports and analyses reflect the proponents' argument that preemption "is necessary to the continued viability of California's agricultural industry. Local communities do not have the expertise or

---

[41] *Id.*, § 11501.1, subd. (b).

[42] *Ibid.*

[43] Stats.1984, ch. 1386; see *People ex rel. George Deukmejian v. County of Mendocino et al.* (1984) 36 Cal.3d 476.

[44] See *People ex rel. George Deukmejian v. County of Mendocino et al.*, *supra*, 36 Cal.3d at pp. 485-488.

[45] Stats. 1984, ch. 1386, § 3.

10

perspective with which to understand the broad implications of decisions relating to pesticide use and regulation."[46]

The first question presented to us asks whether a county may "adopt ordinances to regulate pesticides in the coastal area to implement Local Coastal Program requirements." As a general matter, an "ordinance[] to regulate pesticides" (if adopted outside of the process for state Department of Pesticide Regulation approval contemplated by section 11503) falls squarely within the intended scope of section 11501.1. The question we must resolve here is whether it changes the analysis if such an ordinance is intended "to implement Local Coastal Program requirements" under the Coastal Act. We conclude that it does not.

In harmonizing disparate statutory provisions, we are guided by the principle that later and more specific enactments prevail over earlier and more general ones.[47] Here, section 11501.1 of the Food and Agricultural Code specifically addresses local regulations and ordinances concerning pesticides, and it was enacted more recently than the Coastal Act of 1976.[48] Moreover, section 11501.1 contains no exception for ordinances or regulations contained in LCPs, or that otherwise relate to the coastal zone.

---

[46] Sen. Democratic Caucus, 3d reading analysis of Assem. Bill 2635 (1983-1984 Reg. Sess.) as amended August 28, 1984, p. 2; see also Cal. Dept. Finance, Analysis of Assem. Bill 2635 (1984-1985 Reg. Sess.) as amended August 31, 1984 ("If the bill does not become law . . . the State will lose control over the regulation of pesticides in California. County and local entities will be free to enact their own laws regarding pesticides, which will completely fragment and destroy the statewide interest in controlling agricultural pests."); Cal. Dept. Food & Agriculture, Enrolled Bill Report for Assem. Bill 2635 (1984-1985 Reg. Sess.) ("The safe and efficient use of pesticides is vitally important to California's number one industry – agriculture. Local officials do not have sufficient training or information to make the decisions, which need to be made in this controversial area. California's state regulatory program is the best in the nation and the world. In order to maintain an effective statewide program there must be preemption of local regulation."); Assem. Bruce Bronzman letter to Gov. George Deukmejian re: Assem. Bill 2635 (1983-1984 Reg. Sess.) September 4, 1984 ([T]he regulation of agricultural pesticides requires a coordinated, statewide system and should not be left to the independent decisions of each one of our cities, county, and local districts. Without [the statute], an impossible and chaotic patchwork system of regulations could develop.").

[47] *State Dept. of Pub. Health v. Super. Ct.* (2015) 60 Cal.4th 940, 960; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1208; Code Civ. Proc., § 1859.

[48] *Id.*, § 11501.1 adopted 1984 (Stats. 1984, ch. 1386, § 1); California Coastal Act of 1976 (Public Resources Code, §§ 30000 *et seq.*) adopted 1976 (Stats. 1976, ch. 1330, § 1.)

11

Significantly, in other contexts the Legislature has enacted express statutory exceptions related to the Coastal Act.[49]  Here, however, it chose not to do so.  By its terms, section 11501.1 preempts ordinances that regulate pesticides—even when they are intended to implement coastal conservation requirements.

The Coastal Act does not alter our conclusion.  While the Coastal Act speaks in broad terms about protecting the environment in the coastal zone, it does not specifically address pesticides or contain any exception to the preemption provision in section 11501.1.  Nothing in the Coastal Act indicates that the ordinances and regulations that comprise an LCP are not "ordinance[s] or regulation[s] of local government" subject to preemption by section 11501.1.

To the contrary, the Coastal Act confirms the local nature of the contents of an LCP.  The Act emphasizes, for example, that "[t]he precise content of each local coastal program shall be determined by the local government . . . ."[50]  The Commission's role in reviewing an LCP is to determine whether the plan conforms with the Coastal Act; if so, the Commission "shall" certify the plan.[51]  The Commission may reject proposed zoning ordinances, maps, or other measures only if they "do not conform with, or are inadequate to carry out" the LCP's land use plan.[52]  The Commission may not "diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan."[53]  These provisions convey a clear legislative intent that ordinances and regulations comprising an LCP are local in nature—and that they remain so even after the Coastal Commission has certified them.

This conclusion accords with the opinion in *Yost v. Thomas,* in which the California Supreme Court held that amendments to the land-use portion of an LCP are legislative acts of a local governing body and therefore subject to referendum.[54]  The *Yost* Court observed that the Coastal Act "leaves wide discretion to a local government not only to determine the contents of its land use plans but to choose how to implement these

---

[49] See Gov. Code, §§ 65589.4, subd. (e) (attached housing developments; section "does not apply to the issuance of coastal development permits" under Coastal Act); 65852.2, subd. (*l*) (accessory dwelling units; section "does not supersede or in any way alter or lessen the effect or application" of Coastal Act).

[50] Pub. Resources Code, § 30500, subd. (c).

[51] *Id.*, § 30512, subd. (c); see § 30512.2, subd. (a).

[52] *Id.*, § 30513, subd. (b).

[53] Pub. Resources Code, § 30512.2, subd. (a).

[54] *Yost v. Thomas* (1984) 36 Cal.3d 561, 574.

plans."[55] To be sure, when a local government with a certified LCP issues a coastal development permit, it may be said to be exercising delegated state authority.[56] But that does not undermine our conclusion that an ordinance or regulation that is part of an LCP is still an "ordinance or regulation of local government" for purposes of section 11501.

In its comment letter, the Coastal Commission invokes state appellate authority for the proposition that "LCPs and CDPs 'are not solely a matter of local law, but embody state policy.'"[57] But none of the proffered cases interpreted or applied the preemption provision in section 11501(a). For example, the Commission discusses *Pratt Construction Co., Inc. v. California Coastal Commission*.[58] In that case, the Court of Appeal considered a company's argument that it had obtained vested rights to develop its property under the Subdivision Map Act, and that the Coastal Commission violated its rights by denying a development permit based on state coastal policies that postdated the county's tentative approval.[59] The court's resolution of the issue turned on whether the policy on which the denial was based was a matter local law, or of state law or policy.[60] In that context, the court observed that "under the Coastal Act's legislative scheme . . .

[55] *Id.* at p. 573.

[56] Pub. Resources Code, § 30519, subd. (a) ("[A]fter a local coastal program, or any portion thereof, has been certified and all implementing actions within the area affected have become effective, the development review authority . . . shall no longer be exercised by the commission over any new development proposed within the area to which the certified local coastal program, or any portion thereof, applies and shall at that time be delegated to the local government that is implementing the local coastal program or any portion thereof.") We address a local government's issuance of coastal development permits in more detail below in response to Question 2. (See *infra*, at pp. 15-17.)

[57] California Coastal Commission, letter to Attorney General re: Opn. 21-1001, May 31, 2022, at p. 5, citing *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, *supra*, 55 Cal.4th 783, 794.

[58] *Charles A. Pratt Construction Co., Inc. v. California Coastal Com.*, *supra*, 162 Cal.App.4th 1068.

[59] *Id.* at p. 1075.

[60] See Gov. Code. § 66474.2, subd. (a) (vested rights require local agency to apply only rules that were in effect when tentative map application was complete); Gov. Code, § 66498.6, subd. (b) ("The rights conferred by this chapter shall relate only to the imposition by local agencies of conditions or requirements created and imposed by local ordinances. Nothing in this chapter removes, diminishes, or affects the obligation of any subdivider to comply with the conditions and requirements of any state or federal laws, regulations, or policies and does not grant local agencies the option to disregard any state or federal laws, regulations, or policies.").

the LCP and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy."[61] Applying the terms of the Subdivision Map Act with that observation in mind, the court concluded that the laws and policies considered by the Coastal Commission in denying the development permit "are not subject to the vesting provisions of Government Code section 66498.1, subdivision (b)."[62] But it does not follow from that conclusion that an ordinance in an LCP purporting to prohibit or regulate the use of pesticides is not an "ordinance or regulation of local government" for purposes of preemption under section Food and Agricultural Code section 11501.1. Indeed, *Pratt* itself was careful to emphasize that "[a] case is not authority for issues it does not consider."[63]

The Commission also discusses *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*.[64] In that case, the owner of a mobile home park argued that a uniform statewide procedure for conversion from tenant occupancy to resident ownership set forth in the Subdivision Map Act superseded the requirements of the Coastal Act.[65] The California Supreme Court disagreed, holding that the Subdivision Map Act and the Coastal Act could be harmonized.[66] In a background discussion of how the Coastal Act operates, the Court quoted *Pratt*'s statement that LCPs "and the development permits issued by local agencies pursuant to the Coastal Act are not solely a matter of local law, but embody state policy."[67] Again, however, neither that quotation nor the Court's ultimate holding addresses or resolves the separate issue of whether a local ordinance purporting to regulate pesticide use would fall within, or outside, the preemptive scope of Food and Agricultural Code section 11501.1(a). Nothing in *Pratt* alters our conclusion based on the text, context, and history of section 11501.1(a).[68]

---

[61] *Charles A. Pratt Construction Co., Inc. v. California Coastal Com.*, *supra*, 162 Cal.App.4th at p. 1075.

[62] *Id.* at p. 1076.

[63] *Ibid.*

[64] *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, *supra*, 55 Cal.4th 783.

[65] *Id.* at pp. 792-793.

[66] *Id.* at pp. 805-806.

[67] *Id.* at p. 794.

[68] The Coastal Commission also discusses a superior court case from 2017. (See California Coastal Commission, letter to Attorney General re: Opn. 21-1001, May 31, 2022, at pp. 6-7, discussing *Mountainlands Conservancy, LLC v. California Coastal Commission*, BS 149063, Los Angeles Superior Court (2017); see also Department of

21-1001

Importantly, however, although section 11501.1 generally preempts local government attempts to regulate the use of pesticides via the enactment of an ordinance, regulation, or law of general application, Food and Agricultural Code section 11503 allows counties to seek authority to adopt such ordinances or regulations when done in cooperation with the county agricultural commissioner and with approval from the Department of Pesticide Regulation. The Department regulations describing this process require county agricultural commissioners to consult "[a]t least quarterly" with public agencies "that have jurisdiction by law with respect to resources that may be affected by use of pesticides in the county."[69] These consultations "shall include the identification of past or potential problems associated with the use of pesticides, appropriate alternatives and mitigation measures, and appropriate permit conditions which substantially reduce any problem."[70] In appropriate circumstances, a county agricultural commissioner "may adopt regulations applicable in his or her county which are supplemental to those of the director which govern the conduct of pest control operations and records and reports of those operations. The regulations may include provisions pertaining to any matter related to the accomplishment of the purposes of [Food and Agricultural Code] Section 11737."[71]

---

Pesticide Regulation, letter to Attorney General re: Opn. 21-1001, May 27, 2002, at pp. 8-9.) In that case, the Commission principally argued that section 11501.1 was inapplicable on its face because the challenge was to an action by the Commission—a state agency—not a local government. In the alternative, the Commission argued that if the Commission *required* a local government to adopt specific LCP regulations, those regulations would not be preempted in light of section 11501.1(c). (See Food & Agr. Code, § 11501.1, subd. (c) [stating that section 11501.1 is not "a limitation on the authority of a state agency or department to enforce or administer any law that the agency or department is authorized or required to enforce or administer"].) The superior court agreed with the alternative contention, but its decision was not published, is not precedential, and does not directly address the type of unilateral regulatory action described by the requester here. Moreover, on appeal, the Court of Appeal's opinion was silent on the scope and application of section 11501.1. (See *Mountainlands Conservancy, LLC v. California Coastal Commission* (2020) 47 Cal.App.5th 214.)

[69] Cal. Code Regs., tit. 3, § 6122; see Cal. Code Regs., tit. 3, § 6100, subd. (7) ("For the purposes of this article [establishing statewide pesticide regulatory program] any county agricultural commissioner shall be considered a state agency. Under authority of the Food and Agricultural Code, each commissioner shall administer the local enforcement of the pesticide regulatory program under the supervision of the director."); see generally Food & Agr. Code, § 2121 *et seq.* (county agricultural commissioners).

[70] Cal. Code Regs., tit. 3, § 6122, subd. (a).

[71] Food & Agr. Code, § 11503; see generally Food & Agr. Code, §§ 11737 (county

15

No local ordinance or regulation can become operative until the Director of the Department reviews and approves it. In its review, the Director must follow the Administrative Procedure Act "insofar as practicable."[72] This process fosters local initiative and allows for ordinances and regulations addressing local conditions, while also ensuring their evaluation and approval at the state level.

Thus, in response to the first question, we conclude that a county may not enact ordinances to regulate the use of pesticides for the stated purpose of implementing an LCP without Department approval. A county may, however, seek to regulate the use of pesticides by working with the county agricultural commissioner and submitting proposed ordinances or regulations to the Department for approval.

2. *May a county take other actions—legislative, regulatory or otherwise—in a Local Coastal Program to address the environmental impacts of pesticides without violating Food and Agricultural Code section 11501.1?*

Although Food and Agricultural Code section 11501.1 prohibits local government from adopting ordinances or other local laws or rules of general application that purport to regulate the registration, sale, transportation, or use of pesticides without the approval of the Department of Pesticide Regulation, local governments may address environmental effects of pesticides in the coastal zone by other means. In addition to working with its county agricultural commissioner and the Department of Pesticide Regulation as just described, a county has quasi-adjudicatory power to issue coastal development permits, which it acquires by delegation from the Coastal Commission upon certification of the county's Local Coastal Program.[73] Importantly, section 11501.1 applies only to an "ordinance or regulation of local government." A county's decision to grant a coastal development permit subject to conditions regarding pesticides is not an "ordinance" or "regulation." Rather, a permitting decision is a quasi-judicial decision because it is based on an individualized assessment of the circumstances pertaining to a single piece of property, or a single permit application.[74]

_____

agricultural commissioner may halt pest control operations under certain circumstances, such as operations that are illegal or unsafe, or that interfere with proper pest control), 14006.5 (county agricultural commissioner to review applications for restricted materials permits, giving consideration to local conditions).

[72] *Id.*, § 11503; see also Gov. Code, § 11340 *et seq.* (Administrative Procedure Act); see also 3 Cal. Code Regs. §§ 6110, 6116 (DPR regulations governing procedures for adopting local regulations).

[73] See Pub. Resources Code, § 30519.

[74] See Miller and Starr California Real Estate (4th ed.) § 21:2 (differences between

In the process of deciding whether to grant a permit for a development proposal, a local government may attach conditions to a permit as necessary to carry out coastal conservation policies.[75] Thus, for example, if a local government approves a permit for a new golf course in the coastal zone, it may condition that permit in a way that restrains pesticide use in designated areas of the property if necessary to protect adjacent environmentally sensitive habitat areas. Section 11501.1 does not preempt such permit conditions because they do not regulate pesticides generally, but rather are applied on a case-by-case basis.[76] The key distinction is that such conditions may only be implemented through review and permitting of a particular development. They may not be imposed as ordinances or regulations that purport to regulate the use of pesticides outside of the permit process.

Section 11501.1 also does not foreclose counties from adopting local policies or ordinances, regulations, or other local laws or rules that mitigate the post-use effects of pesticides within the coastal zone, without attempting to regulate the registration, sale, transportation, or use of pesticides themselves. One example is a Los Angeles County ordinance that regulates the way boats are cleaned in the Marina del Rey Harbor.[77] The purpose of the ordinance is to mitigate the effects of copper antifouling paint, a pesticide applied to boats to discourage the growth of barnacles. The Department of Pesticide Control has sole jurisdiction to regulate the use of copper antifouling paint, and it does so by prohibiting the use of paint that exceeds a specified copper leach rate.[78] Although Los Angeles County lacks power to ban copper antifouling paint entirely, it retains power to address the local environmental effects of pesticides. Its ordinance addresses the issue by requiring training and certification in methods of cleaning that minimize copper leaching for any person who cleans a boat in the Marina del Rey Harbor.

Further, counties may adopt local regulations or ordinances designed to reduce the need for using pesticides, such as sanitary rules for the reduction of rodents and other pests. In the same vein, counties are free to create and distribute educational materials providing clear information about alternatives to pesticides. Such policies and regulatory actions do not violate section 11501.1 because they do not purport to regulate pesticide regulation, sale, transportation, or use.

---

legislative land use decisions and quasi-adjudicative land use decisions).

[75] Pub. Resources Code, § 30607.

[76] See Miller and Starr California Real Estate (4th ed.) §§ 21:10 (conditional permits), 21:41-21:42 (different standards of review for legislative and quasi-judicial decisions).

[77] Los Angeles County Ord. No. 2018-0021.

[78] See Food & Agr. Code, § 12995; Cal. Code Regs., tit. 3, § 6190.

21-1001

Finally, pesticide requirements that a local government imposes on its own employees and on its own property are not preempted by section 11501.1.[79]  For example, a county might prohibit its employees from using certain pesticides on county property.  Rules of this kind do not conflict with section 11501.1.

We therefore conclude that a county may take a number of actions, such as imposing pesticides restrictions as conditions in individual development permits, or adopting regulations or other rules that aimed at reducing the need for pesticide use or mitigating the local effects of pesticide use, without violating section 11501.1.

---

[79] See *Great Western Shows, Inc. v. County of Los Angeles* (2002) 27 Cal.4th 853, 869.

21-1001