TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | |
| | : | No. 25-902 |
| of | : | |
| | : | May 28, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

The HONORABLE LISA A. SMITTCAMP, DISTRICT ATTORNEY OF FRESNO COUNTY, has requested an opinion on whether state law preempts a Fresno County Ordinance addressing copper wire theft.

**QUESTION PRESENTED AND CONCLUSION**

Is Fresno County Ordinance No. 25-008, which regulates the possession or transportation of commercial copper wire, preempted by state law?

No, Fresno County Ordinance No. 25-008, regulating the possession or transportation of commercial copper wire, is not preempted by state law.

**BACKGROUND**

Fresno County has adopted Ordinance No. 25-008, regulating certain activities in connection with the possession of scrap, commercial-grade copper wire by individuals without a licensed business.[1] The ordinance declares the prohibited activities to be a

---

[1] Fresno County Ordinance No. 25-008, which is codified at Fresno County Code, ch. 6.27, § 6.27.010 et seq., is set out in full at the foot of this opinion.

1

public nuisance and authorizes county officials to enforce the ordinance through criminal, civil, and administrative actions.[2]

California law criminalizes receipt of stolen property generally, as well as theft of copper components specifically. California law also closely regulates secondhand sales of scrap metals, specifically including copper components, imposing both administrative and criminal penalties depending on the nature of the violation.

Thus, Ordinance No. 25-008 operates within legal areas where state laws are in effect. This circumstance gives rise to the possibility that state law might preempt Ordinance No. 25-008. Recognizing this possibility, the Fresno County District Attorney's Office has requested our opinion as to whether its ordinance is preempted.

## ANALYSIS

We will begin our analysis by describing Fresno's copper wire ordinance. Next, we will lay out the general principles under which state law may preempt local law, and then identify the relevant state statutes that might preempt Fresno's ordinance. Finally, we will compare the potentially preemptive aspects of the relevant state statutes to the ordinance. We end by concluding that state law does not preempt Fresno's ordinance.

### 1. Fresno County Copper Wire Ordinance

Last year, the Fresno County Board of Supervisors enacted Ordinance No. 25-008, pertaining to the illegal possession and transportation of scrap commercial-grade copper wire.[3]

Findings and declarations in the ordinance describe the particular conditions in Fresno County that have made copper wire theft such a problem there.[4] Fresno County is a preeminent locus of commercial agriculture, providing food and other agricultural resources throughout California and across the nation. Its modern operations are characterized by wide-open spaces made productive by large-scale waterworks and machinery. Energy and telecommunication networks are essential to the industry, requiring transmission lines, often made of copper or aluminum, to operate. These metals

---

[2] Fresno County Code, §§ 6.27.060, 6.27.090.

[3] Section 6.27.020(A) defines "commercial grade" as "copper or aluminum wire or cable with a total diameter of .15 inches or greater, exclusive of any sheathing or coating, or telecommunications cable with fifty or more pairs of conductors in a single cable." Section 6.27.020(C) defines "scrap" as "material derived from manufactured components, such as transmission or telecommunications lines, which is no longer useful for its intended purpose and is primarily valuable for recycling."

[4] See Fresno County Code, § 6.27.010 (title, purpose, and intent).

25-902

are valuable for resale, and therefore frequently vandalized, stolen, and sold as scrap. A recycler may pay only several dollars per pound of copper wire, but the economic impact can be much higher. In the process of stealing the wire, thieves often damage the equipment that houses it, leaving victims stuck with the cost of repairs far exceeding the value of the stolen wire. Worse, wire theft leaves the vandalized and expensive infrastructure inoperable until repaired, thereby harming not only the agricultural industry but also the population that depends on agriculture.[5]

In support of its ordinance, the County of Fresno made findings that commercial copper lines "are nearly always sheathed in a protective, insulating coating of rubber, plastic or similar material which contains markings that identify the type of wire or cable and its lawful owner. Once the sheathing is removed it is difficult for law enforcement to identify the lawful owner of the wire or cable. Wire or cable which has had the sheathing removed also sells for more money to recyclers and junk dealers. For both reasons, metal thieves typically strip off, burn off, or otherwise remove this protective sheathing before attempting to sell the stolen metal as scrap."[6] Further, the County of Fresno found that metal theft in the County is overwhelmingly carried out by "individuals acting on their own, with no legitimate business affiliation or purpose."[7]

Based on its findings, Fresno County enacted Ordinance No. 25-008 prohibiting a person to possess ten or more pounds of commercial grade scrap metal ("receive, possess, or transport scrap commercial grade copper or aluminum wire, cable, transformer coils [or other electrical components] *with a total aggregate weight of 10 lbs. or more*").[8] A separate provision prohibits possession of stripped commercial grade copper wire ("receive, possess, or transport scrap commercial grade copper or aluminum wire or cable *which has had its sheathing stripped, burned off, or otherwise removed*").[9] And a third provision prohibits the act of stripping or burning the coating off of commercial wire.[10]

---

[5] See *ibid.*; see also California Department of Justice, Division of Law Enforcement, Information Bulletin No. 2025-DLE-12, "State Statutes Applicable to Copper Wire Theft," June 5, 2025, p. 1, https://oag.ca.gov/system/files/media/2025-dle-12.pdf.

[6] Fresno County Code, § 6.27.010 (title, purpose, and intent).

[7] *Ibid.*

[8] *Id.*, § 6.27.030 (receipt, possession, and transportation of commercial grade scrap metal) (italics added).

[9] *Id.*, § 6.27.040 (receipt, possession, and transportation of stripped commercial grade wire) (italics added).

[10] *Id.*, § 6.27.050 ("No person shall strip, burn, or otherwise remove the sheathing from commercial grade copper or aluminum wire or cable").

None of the ordinance's provisions apply to "a junk dealer or recycler" nor to "any licensed general contractor, subcontractor, or business engaged in the construction, repair, or demolition of buildings, to commercial agricultural businesses, to commercial manufacturing businesses, to licensed businesses engaged in the transport or hauling of materials including scrap metal or commercial grade copper or aluminum wire, or to the agents or employees of those entities."[11]

## 2. Principles Governing State Preemption of Local Laws

Article XI, section 7 of the California Constitution provides that a county or city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." This provision means that "[a]ny conflicting ordinance is preempted by state law and thus void."[12]

Under California Supreme Court precedent, a conflict between state and local law arises if a local law duplicates, contradicts, or enters an area fully occupied by state law.[13]

An ordinance *duplicates* state law when it is coextensive with state law.[14]

An ordinance *contradicts* state law when it is "inimical to or cannot be reconciled with" state law.[15]

An ordinance can *enter a field fully occupied* by state law in either of two ways. First, the Legislature may fully occupy a legal field by *expressly* stating its intent to preclude local legislation on the subject.[16]

---

[11] *Id.*, §§ 6.27.030, 6.27.040, 6.27.050.

[12] E.g., *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1065.

[13] *Id.* at p. 1067; see *T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1116; *Tosi v. County of Fresno* (2008) 161 Cal.App.4th 799, 804.

[14] See *Department of Finance v. Commission on State Mandates* (2021) 59 Cal.App.5th 546, 563-564; see *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897-898 (duplication exists where local law imposes same criminal prohibition as state law).

[15] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at p. 1068; see *Chevron U.S.A. Inc. v. County of Monterey* (2023) 15 Cal.5th 135, 145; *Sherwin-Williams Co. v. City of Los Angeles*, *supra*, 4 Cal.4th at p. 898 (contradiction exists where local law sets maximum speed limit below that set by state law).

[16] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at p. 1068; *Prime Gas, Inc. v. City of Sacramento* (2010) 184 Cal.App.4th 697, 703.

4

25-902

Second, the Legislature may *impliedly* occupy a given field of law.[17] California case law describes three situations where this may occur:

(1) the subject is so *completely covered* by state law as to clearly indicate that it is now a matter of exclusive state concern;

(2) the subject is *partially* covered by state law, and "couched in such terms as to indicate clearly that a *paramount state concern will not tolerate further or additional local action*"; or

(3) the subject is *partially* covered by state law, and the "*adverse effect of a local ordinance on the transient citizens* of the state outweighs the possible benefit" to the locality.[18]

With these principles in mind, we turn to a survey of the state laws that are potentially implicated by Fresno's ordinance.

## 3. Relevant State Laws

In 2025, the California Department of Justice prepared a compilation of California laws pertaining to vandalism and theft of copper wire. Recognizing a statewide rise in copper wire thefts, the Department issued a law enforcement bulletin summarizing existing California statutes related to copper wire theft, and laws governing junk dealer or recyclers' obligations to collect and report information regarding the receipt, purchase, and sale of copper wire.[19]

Laws relating to copper wire theft include:

- Penal Code section 487 (grand theft, i.e., stealing, taking, or carrying away another's personal property exceeding $950);

- Penal Code section 487j (theft of copper materials exceeding $950);

- Penal Code section 496 (receiving stolen property, i.e., buying, receiving, concealing, selling, or withholding property from the owner);

---

[17] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at p. 1068; *Prime Gas, Inc. v. City of Sacramento*, *supra*, 184 Cal.App.4th at p. 703.

[18] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at p. 1068; *Prime Gas, Inc. v. City of Sacramento*, *supra*, 184 Cal.App.4th at p. 703.

[19] California Department of Justice, Division of Law Enforcement, Information Bulletin No. 2025-DLE-12, "State Statutes Applicable to Copper Wire Theft," June 5, 2025, pp. 1-2, https://oag.ca.gov/system/files/media/2025-dle-12.pdf.

25-902

- Penal Code section 591 (cutting or disconnecting a utility line);

- Penal Code section 594 (vandalism, i.e., damaging or destroying the real or personal property of another).

There is also a body of laws regulating secondhand dealers and recyclers, who buy and sell scrap metals. These include:

- Business and Professions Code section 21600 et seq. (recordkeeping and reporting requirements for dealers trading in scrap copper wire);

- Business and Professions Code section 21609 (peace officer having probable cause may place 90-day hold on property in possession of scrap dealer);

- Penal Code section 496a (scrap dealer to record seller's identity; to maintain records; not to receive metals belonging to public utility).

While all these statutes might be deployed to support a general goal of preventing copper wire theft, two of them are most relevant to our preemption analysis. There is no need for us to dwell on the scrap dealer statutes because Fresno's ordinance expressly does *not* apply to secondhand scrap dealers or recyclers, and nothing in the scrap dealer laws reflects an intent to occupy the field covered by Fresno's ordinance.[20] Nor need we engage in extended analysis of the theft crimes (Pen. Code, §§ 487, 487j) because Fresno's ordinance only forbids a person to "receive, possess, or transport" stripped copper wire, or commercial-grade copper wire in quantities of ten pounds or more.[21] The crime of theft, in contrast, involves elements that are not in issue here, such as stealing, taking, or carrying away the personal property of another.[22]

---

[20] Fresno County Code, §§ 6.27.030, 6.27.040, 6.27.050; cf. Bus. & Prof. Code, § 21608.5, subd. (i) ("This section is intended to occupy the entire field of law related to *junk dealer or recycler transactions involving nonferrous material*") (italics added).

[21] Fresno County Code, §§ 6.27.030, 6.27.040.

[22] See Pen. Code, § 484, subd. (a) ("Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another . . . is guilty of theft"). Under California law, a person may be convicted either of stealing an item of property, or of unlawfully possessing the stolen item, but not both. (See Pen. Code, § 496, subd. (a) ["A principal in the actual theft of the property may be convicted pursuant to this section. However, no person may be convicted both pursuant to this section and of the theft of the same property"].)

6

25-902

And we can set aside the crime of cutting a utility line, which entails maliciously taking down, removing, injuring, cutting, disconnecting, or removing a line.[23] By its terms, Fresno's ordinance only comes into play *after* a line has been severed; the ordinance does not apply to the act of severing.

Consequently, we will focus our preemption analysis on two general laws—Penal Code section 496 (receiving stolen property), and Penal Code section 594 (vandalism)—which are most relevant in evaluating Fresno's ordinance. We will also consider whether the collection of state statutes in this area has preemptive effect.

## 4. Application of Preemption Principles to Fresno's Ordinance

In determining whether state law preempts local law, the ultimate question we must answer is whether the ordinance conflicts with the state statute. As set out above, a conflict exists if the ordinance duplicates the statute, contradicts it, or intrudes into a field that is already fully occupied by state law. Field preemption may be either express or implied (in one of three ways).

We will proceed through this sequence twice—once for the sections of the ordinance concerning possession of stolen property (Penal Code section 496), and again for the section of the ordinance concerning vandalism (Penal Code section 594).

### a. Possession of Stolen Property (*Penal Code section 496*)

The first preemption question we take up is *duplication*: Does Fresno's copper wire ordinance duplicate state law in Penal Code section 496, which prohibits possession of stolen property? We conclude that there is no duplication because the ordinance is not coextensive with the statute.

Penal Code section 496(a) prohibits receipt of "any" stolen property, stating, in relevant part:

(a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail . . . .

Fresno County's ordinance addresses similar behavior, but limits the applicable property to specified items of scrap metal, as follows:

---

[23] See Pen. Code, § 591.

Section 6.27.030 states, in relevant part:

> No person shall receive, possess, or transport scrap commercial grade copper or aluminum wire, cable, transformer coils, transformer bands, power conducting components, or control system components of the type commonly found in electrical switch gear, or any combination thereof, with a total aggregate weight of 10 lbs. or more.

Section 6.27.040 states, in relevant part:

> No person shall receive, possess, or transport scrap commercial grade copper or aluminum wire or cable which has had its sheathing stripped, burned off, or otherwise removed.

Comparing the state law to Fresno's ordinance, it becomes plain that one does not duplicate the other, because they are not coextensive. While the state law applies to any kind of property stolen under any circumstances, Fresno's law targets a narrow set of scrap metal items associated with a particular type of local theft. "[C]overing *some* of the same ground as a state law is not enough to render an ordinance duplicative for preemption purposes."[24]

The two laws differ in other ways as well, having to do with the burden of proof and the imposition of penalties. Penal Code section 496 makes it a crime to buy, receive, conceal, sell, or withhold the property of another, knowing that the property was stolen. So, possession alone is *not* sufficient to violate Penal Code section 496; while possession creates a strong inference of guilty knowledge, it must be accompanied by at least some corroborating evidence of guilty knowledge, that is, that the defendant was aware of the stolen character of the property.[25] Section 496 is enforceable through criminal penalties alone, with no administrative enforcement mechanism.

Fresno's ordinance is different. It takes the form of a "public welfare" offense, imposing regulatory liability for possession of controlled items without the necessity of specifically proving guilty knowledge that the items were stolen.[26] Laws of this nature are generally upheld when the importance of the public interest in controlling a noxious item justifies holding violators liable without proof of more specific intent.[27] In this case, Fresno's ordinance closely defines the controlled items (scrap, commercial-grade copper

---

[24] *Kirk v. City of Morgan Hill* (2022) 83 Cal.App.5th 976, 981-982.

[25] See *People v. Vann* (1974) 12 Cal.3d 220, 224; *People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302.

[26] See, e.g., *In re Jorge M.* (2000) 23 Cal.4th 866, 872; *City of Vacaville v. Pitamber* (2004) 124 Cal.App.4th 739, 744.

[27] See *In re Jorge M*, *supra*, 23 Cal.4th at pp. 872-873; *City of Vacaville v. Pitamber*, *supra*, 124 Cal.App.4th at p. 744.

wire, either stripped or in a quantity exceeding ten pounds), while confining the circumstances in which possession can create liability (that is, in the absence of any licensed purpose). And unlike Penal Code section 496, Fresno's ordinance is enforceable administratively (as well as criminally), through immediate issuance of a citation and fine, followed by an opportunity for a hearing and review of the citation.[28] For these reasons, we conclude that Fresno's ordinance does not duplicate state law.[29]

The second preemption question we must answer is whether the ordinance *contradicts* the statute. It does not. The ordinance does not prohibit anything that the statute commands, nor command anything that the statute prohibits.

That leaves *field* preemption, which asks whether the ordinance intrudes into an area that is already fully occupied by the statute. Field preemption may be either express or implied.

As for *express* preemption, we conclude that the Legislature did not expressly manifest its intent to fully occupy any area when it passed Penal Code section 496. No such intention is stated within the text of Penal Code section 496, nor in the legislation enacting it.[30]

As for *implied* preemption, recall that courts have identified three situations in which state enactments will impliedly preempt local laws. The first is when the subject matter of the local ordinance has been so *fully and completely covered* by state law as to clearly indicate that the field has become exclusively a matter of state concern. Here, Penal Code section 496 sweeps in a broad range of conduct, including buying, receiving, concealing, selling, withholding, or aiding in concealing, selling, or withholding *any*

---

[28] See Fresno County Code, § 6.27.090 ("Pursuant to Section 53069.4, of the California Government Code, a County code enforcement officer or Sheriff's deputy may issue an administrative citation to any person for a violation of this chapter occurring in the presence of the enforcement officer, or deputy, or upon the enforcement officer or deputy's reasonably reliable confirmation of a violation"); see generally Gov. Code, § 53069.4 (administrative hearing process for local agency).

[29] See *Great Western Shows, Inc. v. County of Los Angeles* (2002) 27 Cal.4th 853, 865 (ordinance not duplicative because it did not criminalize "precisely the same acts" which were prohibited by statute); *Kirk v. City of Morgan Hill*, *supra*, 83 Cal.App.5th at p. 982, quoting *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 292, fn. 12 (ordinance duplicative only if it "covers no different ground, so ' "a conviction under the ordinance will operate to bar prosecution under state law for the same offense" '").

[30] Pen. Code, § 496 (formerly § 496bb), added by Stats. 1935, ch. 434, § 1, p. 1483; renumbered § 496 and amended by Stats. 1951, ch. 97, § 2, p. 354.

9

stolen property, not just copper wire.[31] But does this broad sweep amount to field preemption? Does Penal Code section 496 so completely cover the field of "receiving stolen property" that it leaves no room for a local government to add a supplemental solution for a persistent local problem of copper wire theft specifically? We do not believe so.

As a matter of law, a general criminal statute does not automatically occupy the field to preempt local government regulation in the same subject matter area.[32] "Case law establishes that an ordinance designed to discourage criminal acts is not necessarily preempted by the statute proscribing those acts."[33] For example, *Harrahill v. City of Monrovia* involved an ordinance prohibiting minors to be in a public place during school hours; violators would be issued an administrative citation in "juvenile traffic court."[34] At the same time, state truancy statutes under the Education Code imposed a detailed schedule of fines and penalties on truant students (including school discipline, community service, or judicial supervision) for repeated absences from school. [35] Even though the state law created a general scheme for enforcing truancy rules, the Court of Appeal concluded that the local ordinance's juvenile daytime curfew did not intrude into a field fully occupied by state law. The court reasoned that "the 'field' at issue is the regulation of off-campus juvenile activity during school hours. And there is no indication that the Legislature has sought to occupy this field, either expressly or by implication."[36] Likewise, here, there is no indication that the Legislature has sought to occupy the field of receiving stolen property to the exclusion of any local regulation.

Implied preemption has sometimes also been found when a collection of statutes works together to occupy an entire legal field. This may be seen, for example, in the areas of firearms regulation, sex offender regulation, and crime-related vehicle forfeiture.[37] Thus, looking at the 2025 Department of Justice bulletin compiling laws

---

[31] See *People v. Boyce* (1980) 110 Cal.App.3d 726, 733-734 (observing statute's broad scope).

[32] *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 409.

[33] *Ibid.*

[34] *Harrahill v. City of Monrovia* (2002) 104 Cal.App.4th 761, 769.

[35] *Id.* at pp. 769-771.

[36] *Id.* at pp. 770-771.

[37] See *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at pp. 1069-1071 (comprehensive drug crimes and penalties scheme preempted local vehicle forfeiture ordinance associated with controlled substance offenses); *People v. Nguyen* (2014) 222 Cal.App.4th 1168, 1180-1182 (state's "comprehensive and standardized system" for regulating sex offenders precluded local law banning sex offenders from city parks); *Fiscal v. City and*

(continued…)

25-902

pertaining to copper wire theft, one might ask whether this collection of statutes is the kind of collection that can preempt Fresno's ordinance. In our view, it is not.

"A preempted field 'cannot properly consist of statutes unified by a single common noun,' but rather requires closely related statutes that regulate an area in a manner that reveals a legislative intent to occupy the field."[38] So it is not enough that each of the statutes collected here pertains to the subject of stolen copper wire. To find preemption, there must also be evidence that the Legislature intended for the selected statutes to work collectively and interactively.[39] There is no such evidence here.[40] Unlike areas where the Legislature has enacted a single, comprehensive legislative scheme, the statutes relevant to copper wire theft were enacted over time, in piecemeal fashion.[41] And nothing in the legislative record suggests that, through this series of enactments, the Legislature intended to calibrate a complete set of offenses pertaining to copper wire theft, excluding any further local regulation.[42] Rather, the Legislature has emphasized that theft of copper wire and other metals is a "growing problem," which it has sought to combat over time through an expanding collection of state-law measures.[43]

---

*County of San Francisco* (2008) 158 Cal.App.4th 895, 909-911 ("broad, evolutional statutory regime" for firearms ownership preempted local ban on handgun possession and sales).

[38] *People v. Nguyen*, *supra*, 222 Cal.App.4th at p. 1178, quoting *Galvan v. Superior Court of City and County of San Francisco* (1969) 70 Cal.2d 851, 862.

[39] *Id.* at pp. 1180-1181 (taken collectively, scope and nature of statutes coupled with statement of legislative intent expressed comprehensive scheme).

[40] See *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 ("The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption").

[41] See Pen. Code, §§ 487, enacted 1993 (grand theft), 487j, enacted 2011 (grand theft copper), 496, enacted 1935 (receiving stolen property), 591, enacted 1872 (cutting utility lines), 594, enacted 1998 (vandalism); Bus. & Prof. Code, § 21600 et seq., enacted 1941 (regulating junk dealers and recyclers); cf. *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at pp. 1069-1071 (discussing California Uniform Controlled Substances Act, Health & Saf. Code, § 11000 et seq., enacted as comprehensive scheme in 1972).

[42] See *Tosi v. County of Fresno*, *supra*, 161 Cal.App.4th at pp. 806-807 (Legislature carefully calibrated record-keeping burdens on junk dealers and recyclers, precluding local regulation that imposed additional burdens).

[43] Sen. Pub. Safety Com., analysis of Assem. Bill No. 316 (2011-2012 Reg. Sess.) as amended May 27, 2011, p. 8; see *id.* at p. 9 (documenting previous legislative efforts that had proven inadequate, prompting enactment of grand theft copper prohibition).

11

Furthermore, Fresno's ordinance is the product of years of trying to address the local problem of copper wire theft using tools, such as Penal Code section 496, that failed to serve the purpose.  At a hearing before the Fresno County Board of Supervisors to consider the ordinance at issue here, the Fresno County Sheriff's Office reported that deputies had repeatedly encountered suspects in possession of commercial-grade copper wire that had been severed and stripped of its protective sheathing, but deputies were unable to seize the wire or arrest the suspects because there could be no hope of finding a victim or witness to identify the now-anonymized wire as their stolen property.[44]  Fresno's experience demonstrates that the state statute addressing receipt of stolen property is failing to meet the specific local issue that Fresno is facing.[45]  Under these circumstances, we cannot conclude that Penal Code section 496 and related statutes so completely cover the field of receiving stolen property that they impliedly preempt Fresno's ordinance.

That leaves the second and third possible paths to implied preemption.  The second path explores whether the subject matter of the ordinance is *partially* covered by the statute in a way that clearly indicates a *paramount state concern* will not tolerate additional local governmental action.  Field preemption happens only when "the nature and extent of the coverage of a field is such that it could be said to display a patterned approach to the subject."[46]  For example, in the areas of firearms regulation, convicted sex offender regulation, and crime-related vehicle forfeiture, state laws have been found to preempt their respective fields because they contain interacting sets of statutes imposing a planned, calibrated regulatory system across a defined set of events.[47]  We see no such pattern or comprehensive scheme here.  Penal Code section 496 plainly does *partially* cover the field of possessing stolen copper wire, but not in such a way as to preclude local government action.  The acts and penalties set out in section 496 describe a common crime, not a network of interactive statutory parts supporting a greater legislative scheme.  And when we examine the group of statutes as a whole, no pattern or

---

[44] Fresno County Board of Supervisors Meeting, April 8, 2025, Agenda Item No. 8, available at Meeting Information - County of Fresno, https://fresnocounty.legistar.com/Calendar.aspx (search for meeting dated Apr. 8, 2025; go to Agenda Item 8; view video 47:45 – 51:00).

[45] See *Big Creek Lumber Co. v. County of Santa Cruz*, *supra*, 38 Cal.4th at p. 1149 ("We have been particularly 'reluctant to infer legislative intent to preempt a field covered by municipal regulation when there is a significant local interest to be served that may differ from one locality to another'").

[46] *People v. Nguyen*, *supra*, 222 Cal.App.4th at p. 1175; see *id.* at pp. 1178-1179.

[47] Cf. *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at pp. 1069-1071 (vehicle forfeiture); *People v. Nguyen*, *supra*, 222 Cal.App.4th at pp. 1180-1182 (sex offenders); *Fiscal v. City and County of San Francisco*, *supra*, 158 Cal.App.4th at pp. 909-911 (firearms).

12

planned scheme emerges either.  Instead, this appears to us to be an area where state law leaves room for specific local legislation to supplement the general state law without offending any "paramount state concern."[48]

The third, and least-traveled, path to implied preemptive intent explores whether the subject matter of the ordinance has been *partially* covered by the statute and is of such a nature to cause *undue adverse effects on transient persons*.  This factor is often cited but little explained in the governing case law.[49]  It is described as guarding against local laws "in which transient citizens of the state are peculiarly concerned, as they are or might be in regulation of traffic or registration of criminals."[50]  We understand this factor as a concern for people who, travelling from place to place within the state, might be disadvantaged by unexpected variations in the prevailing local rules.  Applying the factor, we do perceive that state law partially covers the problem of possessing stolen copper wire, but we do not perceive any danger that the ordinance will have undue adverse effects on transient citizens.  The ordinance specifically does not apply to those individuals most likely to be blindsided by it, including "a junk dealer or recycler" or "any licensed general contractor, subcontractor, or business engaged in the construction, repair, or demolition of buildings, to commercial agricultural businesses, to commercial manufacturing businesses, to licensed businesses engaged in the transport or hauling of materials including scrap metal or commercial grade copper or aluminum wire, or to the agents or employees of those entities."[51]  Given its broad exceptions, we conclude that the ordinance is not preempted because of an adverse effect on transient persons.

In view of the foregoing, we conclude that Penal Code section 496 does not preempt sections 6.27.030 and 6.27.040 of Fresno County Ordinance No. 25-008.

### b. Vandalism (*Penal Code section 594*)

We now repeat the steps of the preemption analysis for section 6.27.050 of Fresno's ordinance, which prohibits the act of stripping copper wire of its sheathing.  The first preemption question we take up is *duplication*:  Does the ordinance duplicate state law prohibiting vandalism?  Is the ordinance coextensive with the statute?

---

[48] *Sherwin-Williams Co. v. City of Los Angeles*, *supra*, 4 Cal.4th at p. 905.

[49] See *Great Western Shows, Inc. v. County of Los Angeles*, *supra*, 27 Cal.4th at pp. 862-863; *Sherwin-Williams Co. v. City of Los Angeles*, *supra*, 4 Cal.4th at pp. 898, 905-906; *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485, 487; *In re Hubbard* (1964) 62 Cal.2d 119, 128; *Galvan v. Superior Court of City and County of San Francisco*, *supra*, 70 Cal.2d at pp. 859-860.

[50] *In re Hubbard*, *supra*, 62 Cal.2d at p. 128.

[51] Fresno County Code, §§ 6.27.030, 6.27.040, 6.27.050.

13

Looking first at the state statute, we see that Penal Code section 594 states, in relevant part:

(a) Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism:

(1) Defaces with graffiti or other inscribed material.

(2) Damages.

(3) Destroys.

. . .

We compare this statute with section 6.27.050 of the ordinance, which states in relevant part:

No person shall strip, burn, or otherwise remove the sheathing from commercial grade copper or aluminum wire or cable.

Again, both provisions address doing damage to the property of another. But the differences in scope are stark: Where section 594 makes it a crime for a person to maliciously "damage" "any" property of another, section 6.27.050 focuses only on a particular type of damage, confined to stripping, burning, or otherwise removing, and only as those acts are directed at a particular set of objects (sheathed commercial-grade wire). In our view, the ordinance does not duplicate the statute.

The second preemption question we must answer is whether the ordinance *contradicts* the statute. It does not. The ordinance does not prohibit what the statute commands or command what it prohibits.

The third preemption issue is whether the ordinance intrudes into an area of law that has been *fully occupied* by the statute.

The first question for field preemption is whether there is *express* preemptive intent. We conclude that the Legislature did *not* expressly manifest an intent to fully occupy an area when it passed Penal Code section 594. No such intention appears either on the face of the statute or in the legislation enacting it.[52]

After express preemption, we consider whether there is *implied* preemptive intent. Again, there are three ways that implied preemption may occur. The first asks whether the subject matter of the ordinance has been so *completely covered* by state law as to

---

[52] Pen. Code, § 594, added by Stats. 1998, ch. 853, § 1.6.

14

clearly indicate that the field has become exclusively a matter of state concern. In this case, section 594 describes vandalism as a crime in which a person "maliciously defaces with graffiti" or "damages" or "destroys" property of another. Subsequent provisions of the statute, and of the surrounding statutes, describe detailed schemes of punishment and remediation for graffiti-related crimes, especially for youthful offenders.[53] But there is no similar proliferation of provisions respecting acts of "damage" or "destruction" of property. In fact, there is no further detail about criminal destruction of property at all. The contrast between the detail surrounding the term "deface[] with graffiti" and the absence of detail surrounding its neighboring term "damage" illustrates that vandalism in the form of non-graffiti "damage" is not treated as a matter of exclusive state concern. We therefore conclude that Penal Code section 594 does not so completely cover the field of damage to personal property that it impliedly preempts Fresno's copper wire ordinance.

The second path to implied preemption asks whether the ordinance's subject matter has been *partially* covered by the statute "in such terms as to clearly indicate that a *paramount state concern* will not tolerate local governmental action."[54] By its terms, Penal Code section 594 generally addresses malicious damage to property, but it is silent on the specific conduct addressed in the ordinance, which is removing the protective sheathing from commercial-grade copper wire. From this we see that the statute does partially cover the subject matter of the ordinance. But does it do so in such a way that indicates property damage is a paramount state concern foreclosing local regulation? We think not. To be sure, section 594 and its surrounding statutes evince the Legislature's concern with the problem of vandalism in the form of graffiti, especially with respect to youthful offenders.[55] But Penal Code section 594.5 expressly leaves open the possibility for local governments to adopt additional measures addressing graffiti.[56] And again,

---

[53] Pen. Code, § 594, subds. (b)-(f) (vandalism); see *id.*, §§ 594.05 (damages for vandalism statute), 594.1 (etching creams), 594.2 (drill bits and cutting tools), 594.3 (places of worship), 594.35 (cemeteries), 594.37 (funerals), 594.4 (caustic chemicals), 594.8 (destructive implements), 640.5 (government facilities), 640.6 (community service and abatement), 640.7 (highways), 640.8 (freeways).

[54] *O'Connell v. City of Stockton*, *supra*, 41 Cal.4th at pp. 1067-1068.

[55] See Pen. Code, §§ 594-594.8, 640.5-640.8.

[56] Penal Code section 594.5 states:

Nothing in this code shall invalidate an ordinance of, nor be construed to prohibit the adoption of an ordinance by, a city, city and county, or county, if the ordinance regulates the sale of aerosol containers of paint or other liquid substances capable of defacing property or sets forth civil administrative regulations, procedures, or civil penalties governing the

(continued…)

15

25-902

there are no further details about non-graffiti damage or destruction to personal property; on that subject, the statute is silent. The stripping of commercial-grade copper wire is thus not a field in which the state has asserted a paramount interest that cannot tolerate local government action.[57] We therefore conclude that, although section 594 does partially cover the relevant subject matter, this is not a field of exclusive state concern such that the statute preempts the ordinance.

Lastly, there is no preemption by the third path here either. Again, for the same reasons identified above in connection with possession of copper wire, the act of stripping copper wire is not a matter in which transient persons would be particularly vulnerable.[58]

Accordingly, we conclude that Penal Code section 594 does not preempt section 6.27.050 of Fresno County Ordinance No. 25-008.

## CONCLUSION

For the foregoing reasons, we conclude that Fresno County Ordinance No. 25-008 is not preempted by state law.

---

placement of graffiti or other inscribed material on public or private, real or personal property.

See also Pen. Code, § 13825 (state graffiti clearinghouse for abatement grants and programs).

[57] See *Sherwin-Williams Co. v. City of Los Angeles*, *supra*, 4 Cal.4th at pp. 904-905.

[58] *In re Hubbard*, *supra*, 62 Cal.2d at p. 128.

25-902

Chapter 6.27 - ILLEGAL POSSESSION OR TRANSPORTATION OF COMMERCIAL COPPER WIRE

§ 6.27.010 - Title, purpose, and intent.

This Chapter shall be known as the Commercial Grade Scrap Metal Ordinance.  The Board of Supervisors finds that commercial agriculture is vital to the economy of the County of Fresno.  Businesses engaged in commercial agriculture rely upon infrastructure, such as energy transmission and telecommunication lines, to operate.  Transmission and telecommunication lines, and related infrastructure, are often made of copper or aluminum, which can be sold as scrap metal to recyclers or junk dealers.  Although these components are much more valuable to their lawful owners when used for their intended purpose, they are nevertheless frequently stolen by thieves seeking to sell copper or aluminum components as scrap.  The process of stealing copper and aluminum components renders vital infrastructure inoperable until repaired, thereby harming the public health, safety and welfare which depend on such infrastructure.  The cost of repairing and replacing infrastructure damaged by metal thieves substantially burdens businesses, public utilities, law enforcement and the public generally.  Although the damage caused by metal thieves burdens all residents of the County, commercial agricultural businesses are particularly vulnerable to metal thieves due to the rural nature of agriculture.  It is estimated that metal thieves inflicted over $3 million in damage to commercial operations in the County of Fresno alone in 2023.

Telecommunications and transmission lines are nearly always sheathed in a protective, insulating coating of rubber, plastic or similar material which contains markings that identify the type of wire or cable and its lawful owner.  Once the sheathing is removed it is difficult for law enforcement to identify the lawful owner of the wire or cable.  Wire or cable which has had the sheathing removed also sells for more money to recyclers and junk dealers.  For both reasons, metal thieves typically strip off, burn off, or otherwise remove this protective sheathing before attempting to sell the stolen metal as scrap.

Existing California law regulates the businesses of junk dealing and recycling, requiring businesses to adhere to extensive regulations when accepting scrap metal for recycling, but those laws are not readily applied to individuals without a business affiliation.  However, metal theft in the County of Fresno is overwhelming carried out by individuals acting on their own, with no legitimate business affiliation or purpose.  Additionally,

Fresno is a largely rural and agricultural county and is uniquely and particularly vulnerable to theft and destruction of infrastructure because its telecommunications and energy infrastructure are spread out over vast distances that cannot be feasibly secured or observed. Consequently, existing California law is insufficient to address the unique circumstances faced by the County of Fresno, and the Board of Supervisors finds that a county ordinance is necessary to address these issues. It is the purpose and intent of this chapter to support and supplement existing state law by giving law enforcement officials tools to deter, prevent, and punish the theft and vandalism of transmission and telecommunication lines by individuals without connection to a lawful business. It is not the purpose or intent of this chapter to impede or interfere with ordinary and lawful recycling, or duplicate or contradict existing state law pertaining to junk dealers and recyclers. Based upon the foregoing, the Board finds that it can be demonstrated by clear and convincing evidence that this ordinance is both necessary and addresses a unique problem specific to the County of Fresno that cannot effectively be addressed by existing law.

§ 6.27.020 - Definitions.

For the purposes of this chapter:

A. "Commercial grade" refers to copper or aluminum wire or cable with a total diameter of .15 inches or greater, exclusive of any sheathing or coating, or telecommunications cable with fifty or more pairs of conductors in a single cable.

B. "Sheathing" means the coating, typically made of plastic, rubber or a similar substance, which insulates and protects commercial grade wire or cable, and often bears markings which identify the lawful owner, purpose, or source of the wire or cable.

C. "Scrap" means material derived from manufactured components, such as transmission or telecommunications lines, which is no longer useful for its intended purpose and is primarily valuable for recycling.

§ 6.27.030 - Receipt, possession and transportation of commercial grade scrap metal.

No person shall receive, possess, or transport scrap commercial grade copper or aluminum wire, cable, transformer coils, transformer bands, power conducting components, or control system components of the type commonly found in electrical switch gear, or any combination thereof, with a total aggregate weight of 10 lbs. or more. This section does not apply to a junk dealer or recycler within the meaning of California Business and Professions Code section 21601, or to a person with a current and valid business license from the County of Fresno to operate as a junk dealer,

18

secondhand dealer, itinerant dealer, used goods dealer, or flea market operator as set forth in Chapter 6.24 of this Ordinance Code, or to the agents or employees of those entities.  This section does not apply to any licensed general contractor, subcontractor, or business engaged in the construction, repair, or demolition of buildings, to commercial agricultural businesses, to commercial manufacturing businesses, to licensed businesses engaged in the transport or hauling of materials including scrap metal or commercial grade copper or aluminum wire, or to the agents or employees of those entities.

§ 6.27.040 - Receipt, possession, and transportation of stripped commercial grade wire.

No person shall receive, possess, or transport scrap commercial grade copper or aluminum wire or cable which has had its sheathing stripped, burned off, or otherwise removed.  This section does not apply to a junk dealer or recycler within the meaning of California Business and Professions Code section 21601, or to a person with a current and valid business license from the County of Fresno to operate as a junk dealer, secondhand dealer, itinerant dealer, used goods dealer, or flea market operator as set forth in Chapter 6.24 of this Ordinance Code, or to the agents or employees of those entities.  This section does not apply to any licensed general contractor, subcontractor, or business engaged in the construction, repair, or demolition of buildings, to commercial agricultural businesses, to commercial manufacturing businesses, to licensed businesses engaged in the transport or hauling of materials including scrap metal or commercial grade copper or aluminum wire, or to the agents or employees of those entities.

§ 6.27.050 - Stripping of commercial grade wire.

No person shall strip, burn, or otherwise remove the sheathing from commercial grade copper or aluminum wire or cable.  This section does not apply to a junk dealer or recycler within the meaning of California Business and Professions Code section 21601, or to a person with a current and valid business license from the County of Fresno to operate as a junk dealer, secondhand dealer, itinerant dealer, used goods dealer, or flea market operator as set forth in Chapter 6.24 of this Ordinance Code, or to the agents or employees of those entities.  This section does not apply to any licensed general contractor, subcontractor, or business engaged in the construction, repair, or demolition of buildings, to commercial agricultural businesses, to commercial manufacturing businesses, to licensed businesses engaged in the transport or hauling of materials including scrap metal or commercial grade copper or aluminum wire, or to the agents or employees of those entities.

25-902

§ 6.27.060 - Enforcement.

A violation of this chapter is subject to enforcement through criminal prosecution, civil action, administrative citation, and civil penalties, as provided herein, including by injunction. Any violation of this chapter is a misdemeanor, punishable by up to 180 days in the County Jail, a fine of up to $1,000.00, or both.

§ 6.27.065 - Licensed businesses and proof of ownership.

A. Notwithstanding any other provision in Chapter 6.27 of the Fresno Ordinance Code, it shall be a defense to any criminal or civil enforcement of this Chapter, if, at the time of the alleged violation of Sections 6.27.030, 6.27.040 or 6.27.050 of this Chapter, the person alleged to have violated these sections possesses a valid business license for one of the types of commercial activities listed in sections 6.27.030, 6.27.040 or 6.27.050, or other valid state or local business license which would render the activity prohibited by Sections 6.27.030, 6.27.040 or 6.27.050 a legal and legitimate commercial activity.

B. Notwithstanding any other provision in Chapter 6.27 of the Fresno Ordinance Code, it shall be a defense to any criminal or civil enforcement of this Chapter, if, at the time of the alleged violation of Sections 6.27.030, 6.27.040 or 6.27.050 of this Chapter, the person alleged to have violated these sections possesses adequate written evidence of legal ownership of the scrap commercial grade copper or aluminum wire or cable that is the subject of the alleged violation.

C. Notwithstanding any other provision in Chapter 6.27 of the Fresno Ordinance Code, no citation shall be issued to, and no arrest made of, any person having in their possession at the time of the alleged violation of Sections 6.27.030, 6.27.040 or 6.27.050 of this Chapter, a business license as described in Subsection A, of this Section or adequate written evidence of ownership of the of the scrap commercial grade copper or aluminum wire or cable that is the subject of the alleged violation as described in Subsection B, of this Section.

D. Any person who presents, shows or uses false, counterfeit or fraudulent written evidence of ownership of the scrap commercial grade copper or aluminum wire or cable alleged to be the subject of a violation of Sections 6.27.030, 6.27.040 or 6.27.050 of this Chapter, in an attempt to prove ownership of those materials shall be guilty of a misdemeanor and subject to the criminal penalties provided in Section 6.27.060.

§ 6.27.080 - Public nuisance.

A violation of this chapter is hereby declared to be a public nuisance.

25-902

§ 6.27.090 - Administrative remedies.

A. Administrative Citations. Pursuant to Section 53069.4, of the California Government Code, a County code enforcement officer or Sheriff's deputy may issue an administrative citation to any person for a violation of this chapter occurring in the presence of the enforcement officer, or deputy, or upon the enforcement officer or deputy's reasonably reliable confirmation of a violation.

B. Administrative fine amounts. The fine amounts for any administrative citation issued under this chapter shall be:

1. Five hundred dollars ($500) for a first violation.

2. Seven hundred and fifty dollars ($750) for a second violation of this chapter within one year of the first violation.

3. One thousand dollars ($1,000) for each violation of the same ordinance within one year of the first violation.

Revenues received from citations issued pursuant to the chapter shall be deposited in the account of the county department which issued the citation.

C. Contents of the Administrative Citation. An administrative citation issued for a violation of this chapter shall contain the following information: (a) the date of the violation and any previous administrative citations for violation of this chapter issued with the proceeding one-year period; (b) a description of the violation; (c) a reasonably clear description of where the violation occurred or was confirmed to have occurred; and (d) evidence identifying the person receiving the administrative citation as the person responsible for the violation.

D. Service of citations. An administrative citation issued pursuant to this chapter shall be served on the responsible person as follows:

1. The enforcement officer or deputy Sheriff may personally serve the responsible person at any time. The enforcement officer or deputy Sheriff may obtain the signature of the responsible person on the administrative citation, which shall create a presumption of personal service. The lack of signature shall in no way affect the validity of the administrative citation.

2. Alternatively, or in addition to personally serving the administrative citation, the enforcement officer or deputy Sheriff may provide notice by mailing the administrative citation to the responsible person by first class mail, postage prepaid.

3. Alternatively, or in addition to, personally serving or mailing the administrative citation, an enforcement officer or deputy Sheriff may utilize

21

any other means fairly and reasonably calculated to provide notice of the violation.

E.  Effective date of service.  Service of the administrative citation shall be effective on the date it was personally served, mailed, or otherwise delivered by the enforcement officer or deputy, regardless of when it is actually received by the responsible person.

F.  Finality.  Unless the responsible person properly requests a hearing to challenge an administrative citation issued pursuant to this chapter within 30 days of the date of issuance, the administrative citation shall constitute the final administrative order, and the imposition of the administrative penalty shall become a final order.

§ 6.27.100 - Appeals of administrative citations.

The procedures to appeal an administrative citation issued pursuant to this chapter are as follows:

A.  Hearing Request.  Any person issued an administrative citation for violation of this Chapter may contest the citation by requesting a hearing according to the procedures found in Section 1.13.170 of this code.  A person financially unable to pay the administrative fine as provided in Section 1.13.170 may request an advance deposit hardship waiver as set forth in Section 1.13.180.

B.  Hearing Officer.  For hearings to challenge an administrative citations issued pursuant to this Chapter, the County Administrative Officer, or the designee thereof, in consultation with the Director of the enforcing department of the county, or the designee thereof, or the Sheriff-Coroner, or the designee thereof, shall appoint a hearing officer to preside over an administrative citation hearing that has been properly requested under the provisions of this chapter and this code.

C.  Hearing Procedures.  The procedures for a hearing to contest an administrative citation issued pursuant to this Chapter are the same as those procedures listed in Section 1.13.200 of this code.

D.  Hearing Officer's Decision.  A hearing officer appointed to hear a contest to an administrative citation issued pursuant to this Chapter shall follow the procedural requirements of Section 1.13.210 of this code.

E.  Right to Judicial Review.  Any person aggrieved by the decision of an administrative hearing officer in any hearing on an administrative citation under this Chapter, may obtain review of the administrative decision by filing a petition for review with the Fresno County Superior Court, in accordance with the timeline and other provisions set forth in Section 53069.4 in California Government Code.

F.  The procedures of Sections 1.14.020—1.14.050 of this code are applicable to this chapter.

G.  Recovery of Administrative Citations and Civil Penalties.  The county may collect any past due administrative citation(s) or unpaid civil penalties, assessed, and issued pursuant to this Chapter, by use of any and all available legal means, including, without limitation, as a personal obligation or a lien recorded against any real property owned by the person(s) found to have violated this Chapter.  County Counsel may bring a civil action in the name of the county to recover any past due administrative citation(s) or unpaid civil penalties and may enforce any judgment to collect any unpaid sum in the same manner as civil judgments.

§ 6.27.110 - Civil actions.

A.  In addition to the remedies provided in this chapter, County Counsel may bring a civil action in a court of competent jurisdiction against any person found to have violated this Chapter.  In the civil action, County Counsel may pursue all available remedies authorized by law and may seek to recover all Costs related to the action.

B.  The court in which such a proceeding is heard may assess a civil penalty in amount not to exceed $1,000 for each separate violation of this chapter.  In determining the amount of the civil penalty, the court shall take into consideration all relevant circumstances, including, but not limited to, the extent of harm caused by the violation, the nature and persistence of the violation, the fact of any past violations, and corrective action, if any taken by the violator.

§ 6.27.120 - Non-exclusive remedy.

This chapter is not the exclusive regulation or penalty for acts prohibited hereby.  It supplements and is in addition to other regulatory codes, statutes, and ordinances heretofore or hereafter enacted by the County, state or any legal entity or agency having jurisdiction.

§ 6.27.130 - Severability.

If any portion of this chapter is held to be invalid by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this chapter.  The Board hereby declares it would have passed each remaining portion irrespective of the fact that any one or more portions are declared invalid.

25-902